## HALLIDAY et v MARCHINGTON

Ohio Appeals, 4th Dist, Meigs Co

Decided Nov 23, 1932

A. D. Russell, Pomeroy, for plaintiffs in error.

Ralston Russell for defendant in error.

MAUCK, PJ.

The action was not properly begun. §4749, GC, makes a board of education a body politic and corporate. Liabilities of a board of education should be ascertained and enforced by an action against the board in its corporate name, and not by an action against the individuals who constitute the board. There is, of course, no individual liability against the members for an indebtedness of the board itself. 22 Ruling Case Law, 487. The demurrer should have been sustained. While the overruling of the demurrer would afford ground for a reversal requiring the discharge from the action of the individuals composing the board, the cause might have proceeded against the board if the same indulgence should be allowed as was tolerated in **Harding v Trustees of New Haven Tp., 3 Ohio, 227.**

A more serious question arises as to whether the board of education, if properly sued, could be held for the claims asserted in the plaintiff's petition. The Supreme Court has dealt with this question in the two cases, **State ex Masters v Beamer, 109 Oh St, 133, 141 NE, 851,** and **Sommers v Putnam County Board of Education, 113 Oh St, 177, 148 NE, 682,** and the plaintiff in this case relied upon the interpretation put upon the statutes by the Supreme Court in these two cases. It must be noticed, in the first place, that these cases rested upon the mandatory duty of the local board of education as fixed by §7764-1, GC. That section was repealed by the General Assembly, 111 Ohio Laws, 123, 125, effective July 10, 1925, and cannot be the basis of any recovery by the plaintiff for the school year beginning in September, 1925. §7764-1 GC (109 Ohio Laws, 380) was in force when the Masters and Sommers cases were decided. Those cases, therefore, furnish no authority for recovery by the plaintiff for the school year beginning in 1925. Since 1925 the local board of education is not required to transport a pupil until the county board of education finds the same advisable and practicable. §7749-1, GC (111 Ohio Laws, 124). So much of the plaintiff's claim, therefore, as arises for transportation for the school year beginning July, 1925, had no statutory support at all, as it is manifest that the county board of education did not pass upon the advisability and practicability of the transportation of the plaintiff's children.

There remains, however, the question of the right of the plaintiff to recover for transportation for the years beginning in September, 1922, 1923, and 1924, when the law was the same as it was when the Masters and Sommers cases were decided. At that time as already pointed out, there was a mandatory duty imposed by what was then §7764-1 GC upon the board of education to provide high school work for pupils who had finished the elementary grades (109 Ohio Laws, 380).

The Supreme Court in the Masters case in interpreting the duty of a board of education under §7764-1 GC said that the board had three options. One was that it might provide high school branches, taught in the elementary school; the second was that it might transport or pay for the transportation to a high school of pupils entitled thereto; and the third was that it might pay the board and lodging of pupils outside the district. It consequently follows that there was no default upon the part of the board of education unless it failed to exercise any and all of these options. Under §7731-4 GC it became the duty of the local board in the exercise of these options to determine whether transportation was practicable or not, and whether it could secure a reasonable offer for transportation. If it found such transportation impracticable, the county board was required to pass upon the question, and could overrule the local board if the county board found the transportation to be practicable, and any offers to perform that service reasonable in price. If the county board, however, agreed with the local board, then, and then only, could such local board pay the parent for transporting his children according to the schedule fixed by the statute. Moreover, by §7749-2, GC, the local board of education might

Page number at top

furnish the cost of the pupil's room and board in another district only when it had the approval of the county board. It thus appears that the duties of the local board of education and the county board of education were so interlocked that the local board did not have the right to exercise the options referred to without the co-operation of the county board.

In the Sommers case, upon which the plaintiff relies for recovery, the parent had requested the township board of education to furnish him some one of these optional facilities, and upon the refusal of the local board so to do had applied to the county board for the same relief. His application to the county board after the refusal of the local board to act was provided for by §7610-1, GC. In the Sommers case, therefore, the parent had exhausted his possibilities for relief, and nothing was left for him to do but transport his children or be subject to the penalty imposed upon parents who do not send their children to school as the law provides. It was from all these circumstances that the quasi contract arose upon which Sommers was held to have a right to recover.

In the case at bar there is grave question whether the plaintiff made any application at all even to the local board. We question the competency of his testimony tending to show that he notified the individual members of the board. **Board of Education v Cox**, 117 Oh St, 406, 159 NE, 479. It would be an unfortunate situation if the board of education as a body politic could be held liable for defaulting in a duty where knowledge of the duty was imputed only to an individual member. If that were the law one who had failed wholly to give any notice to either board of education might thereafter successfully assert a claim against the local board of education if a single member of the latter board would acknowledge that a demand had been made upon him. The question, however, of whether the local board had had notice was a question for the jury. We assume for the purposes of this case that it was shown that the local board did have notice in the written demand supposed to have been mailed the board for that purpose. It nevertheless appears that the plaintiff had made no request of the county board; that the county board not having been invited to pass upon the problem, and not having passed upon it, the local board never had a chance to exercise its option to afford the plaintiff relief by employing him to transport the pupils or by paying the pupils' board at Rutland. The case, therefore, does not fall within the rule laid down in the Sommers case.

In furnishing transportation for his children, no case of quasi contract arose, for the reason that the plaintiff did not exhaust his opportunity for securing his relief at the hands of the public officials. He took the law into his own hands without giving those officials charged with responsibility the opportunity of meeting that responsibility.

While, therefore, other questions in the case, including that of the weight of the evidence, would require a reversal of the judgment under review, we now find that the plaintiff in failing to seek relief from the county board failed in a particular essential to his recovery.

The defendants were entitled to a directed verdict at the conclusion of the plaintiff's testimony and at the conclusion of all of the testimony. The judgment is reversed, and proceeding to render the judgment that ought to have been rendered in the trial court judgment is here entered for the defendants below, the plaintiffs in error here.

Judgment for plaintiffs in error.

MIDDLETON and BLOSSER, JJ, concur.