BOWMAN, ADMX., APPELLANT, *v.*
PARMA BOARD OF EDUCATION ET AL.,
APPELLEES.

(No. 53501—Decided
March 14, 1988.)

*Michael I. Greenwald,* for appellant.

*Ronald V. Rawlin* and *C. Douglas Lovett,* for appellees.

DAVID T. MATIA, J. Plaintiff-appellant, Cynthia J. Bowman, Administratrix of the Estate of Phillip L. Ginebaugh, appeals the ruling of the Cuyahoga County Court of Common Pleas granting the unopposed motion for summary judgment of defendants-appellees, Board of Education of the Parma City School District (hereinafter "the Parma Board"), David Smallwood, and Edward Karns.

The original plaintiff in this matter was Phillip L. Ginebaugh. His initial complaint was filed April 22, 1985, named the Parma Board and five John Does as defendants and stated two causes of action. The first claim for relief in the complaint alleged breach of a covenant of non-disclosure contained in a settlement agreement which terminated appellant's employment as a teacher in the Parma City School District. The second claim of the complaint alleged that the breach of the covenant of non-disclosure was "tortious in nature." On August 20, 1985, a "First Amended Complaint" was filed adding Parma Board member David Smallwood as a defendant, modifying the second claim to allege that the defendants' breach of the covenant of non-disclosure was "reckless" or "negligent," and adding a

third claim which sounded in defamation.

On November 12, 1985, Phillip L. Ginebaugh committed suicide. On January 3, 1986, a "Second Amended Complaint" was filed substituting Cynthia J. Bowman, administratrix of the decedent's estate, as plaintiff[1] and adding Parma Board member Edward Karns as a new-party defendant. On August 8, 1986, a "Third Amended Complaint" was filed adding a claim for wrongful death.

On December 5, 1986, pursuant to leave appellees moved for summary judgment. Appellees variously argued that the non-disclosure clause was unenforceable and non-binding in any event on the individual defendants; that appellant's defamation claims lacked merit and were time-barred; and that the tort claims did not survive Ginebaugh's death. Appellant filed neither a brief nor evidentiary materials in opposition to appellees' summary judgment motion.

The extensive materials attached to the appellees' motion for summary judgment and authenticated through reference by incorporation into accompanying affidavits establish the following facts. Phillip Ginebaugh had been employed by the Parma City School District as a physical education teacher since 1971. As early as 1978, female aides began avoiding Ginebaugh due to improper advances on his part for which he was duly warned by his principal at that time. In February 1980, Ginebaugh was warned that his employment was in "jeopardy" following a struggle with a high school student and episodes of paddling students, a practice forbidden by school district policy. In December 1981, Ginebaugh reportedly punched a third grade student.

In June 1982, Ginebaugh cornered a sixth grade student in a storeroom where they were taking inventory of gym materials. The student reported that Ginebaugh "nibbled" on her ear and asked, "What would you do if I kissed you?" At the same time another child complained that during a gym class Ginebaugh called her over and attempted to kiss her. At this time the Parma Board demanded that Ginebaugh resign. He was given to June 24, 1982 to obtain legal counsel.

On August 17, 1982, formal termination proceedings were initiated against Ginebaugh. A written summary of the allegations against him was supplied. Since Ginebaugh's teaching contract was continuing in nature, the proceedings were for an involuntary termination for cause. The matter was set down to be heard on October 28, 1982.

Prior to the hearing, the Parma Board engaged in an in-depth investigation of Ginebaugh's alleged misconduct. The investigation placed the events that had prompted the termination proceedings into a disturbing perspective. In the school year 1981-1982 alone it was discovered that Ginebaugh had molested a far greater number of children in a far greater variety of ways than previously had been suspected. Specifically, a number of students came forward and asserted that Ginebaugh had attempted or succeeded at kissing, hugging, or rubbing their legs or thighs, had rubbed his body against them while they were pinned against a wall,[2] had offered

---

[1] Appellees' motion to dismiss for failure to file a motion for substitution within ninety days of the suggestion of Phillip Ginebaugh's death on the record was denied and has not been appealed.

[2] This is conduct suggestive of "frottage," a form of sexual conduct in which an individual seeks gratification by rubbing against another. In this case, such conduct would be deviant and criminal.

good grades in exchange for back rubs, had taken off their shoes and socks, or had tickled their legs, sides or abdomens. In one instance Ginebaugh had insisted that a new female student give him a hug. In another instance Ginebaugh had held a girl around the back, lowered her to the floor and given her a "Hollywood type kiss" in front of an entire gym class.

On October 7, 1982, the Parma Board supplied to Ginebaugh's counsel a list of twelve student witnesses who were prepared to testify against him. The Parma Board indicated that as many as a dozen more students were expected to be called to testify.

Within the week, Ginebaugh's union representatives contacted the Parma Board. The union representatives proposed settlement by resignation on favorable terms. The Parma Board rejected the initial proposal but accepted a subsequent proposal. The parties entered into a settlement agreement which provided in part that:

"4. The Board shall provide Ginebaugh with a letter stating the dates of his employment by the Board, a description of his teaching duties during this period and a statement as to when he obtained his continuing contract. No further references or other statements related to Ginebaugh's employment will be given unless required by Court order."

The agreement also settled financial matters between the parties and banned Phillip Ginebaugh from all school buildings and office buildings of the Parma City School District. On October 26, 1982, Phillip Ginebaugh tendered his resignation. The record does not reveal which party drafted the settlement agreement.

The incident which constitutes the foundation for the appellant's claims occurred on October 30, 1984. That evening appellee David Smallwood,

having discovered that the Lorain City School District had employed Phillip Ginebaugh as a teacher, telephoned James Dayka, President of the Lorain Board of Education. Appellee Smallwood confidentially advised Dayka that Phillip Ginebaugh had been in the process of being terminated by the Parma Board "* * * on a morals charge for child molesting * * * based on at least one incident involving tickling elementary school students * * *."

Prior to appellee Smallwood's telephone call to James Dayka, the Lorain Board had made a pre-employment investigation of Phillip Ginebaugh. During interviews, Ginebaugh downplayed the circumstances attendant to his resignation in Parma, informing his prospective employer that his troubles had involved using "unnecessary force" with students and a "harmless" incident of "tickling" a student. Officials of the Parma Board had declined to divulge to the Lorain Board any information from Ginebaugh's "sealed" personnel file. School officials in Berea and Brunswick also advised the Lorain Board that Ginebaugh had a poor work record and "a lot of personal problems."

In spite of the results of its investigation the Lorain Board employed Ginebaugh. No action was taken by the Lorain Board despite appellee Smallwood's telephone call to Lorain Board President James Dayka.

In January 1985, a female student reported that Ginebaugh had touched her legs and propositioned her at a wrestling match held at Norwalk Junior High School on January 12, 1985. On January 23, 1985, Lorain City School officials advised Ginebaugh that an administrative hearing would be held on January 29, 1985, to consider charges and specifications concerning the wrestling match incident.

On February 21, 1985, Ginebaugh walked off the job at 10:00 a.m. and

went to a bar where he consumed six vodka-based beverages. The next day Ginebaugh was advised that an administrative hearing would be held on March 1, 1985, with respect to the incident of the previous day.

On March 14, 1985, the Lorain Board initiated termination proceedings against Ginebaugh. On April 9, 1985, the Superintendent of the Lorain City School District received a note from Ginebaugh wherein Ginebaugh stated, *inter alia,* "If only the little girl had not lied about the wrestling match I would be at work today." In May 1985, the Lorain Board entered into a settlement agreement with Phillip Ginebaugh, who resigned.

On February 12, 1987, the Cuyahoga County Court of Common Pleas granted the appellees' motion for summary judgment. This appeal timely followed.

## I

Appellant's first assignment of error is that:

"The lower court erred in granting summary judgment to defendants. The non-disclosure clause of the settlement contract is not void or illegal as a matter of public policy."

In their motion for summary judgment, appellees argued that the non-disclosure clause of the settlement agreement between the Parma Board and Phillip Ginebaugh was void as against public policy, because it violated the open public records provision of Ohio law and because in effect it required suppression of information concerning criminal conduct. Appellees first argued that an employment separation agreement clause purporting to prohibit a school district from disclosing pedophilia[3] on the part of a teacher to a school district that subsequently employs him is void as against public policy. Upon the facts of this case, this court agrees.

The evidence implicating Phillip Ginebaugh as a man entirely unsuited for the teaching profession is clear. In light of appellant's utter failure to contradict the mass of documentary evidence of Ginebaugh's status as a child molester, there can be no question of fact on the issue. See *Insurance Co. of North America* v. *Silver* (July 5, 1984), Cuyahoga App. No. 47707, unreported. This in turn is dispositive of the public policy issue. The only possible conclusion under the circumstances of the instant case is that the non-disclosure clause is void and unenforceable and no cause of action will lie for its breach.

Phillip Ginebaugh's decision to remain in the teaching profession undermines any validity the non-disclosure clause might otherwise have possessed. This court will not countenance an action for breach of such a clause upon such unchallenged facts as those in the instant case, for to do so would be to expose our most vulnerable citizens to a completely unacceptable risk of physical, mental and emotional harm.

Appellant also contests the remaining grounds upon which appellees challenge the non-disclosure clause of the parties' settlement agreement, that it contravened the open public records provision of the Ohio Revised Code[4] and in effect required the suppression of evidence of criminal behavior. Appellant asserts that the

---

[3] "Pedophilia" literally means "love of children," an inaccurate description of a personality disorder in which an adult attempts to obtain sexual gratification through contact with children. See, also, Webster's Third New International Dictionary (1986) 1665 where "pedophilia" is noted as a condition "in which children are the preferred sexual object."

[4] R.C. 149.43.

clause permitted disclosure by court order and suggests that the Lorain Board could have accessed Ginebaugh's personnel file through the vehicle of a writ of mandamus, citing *State, ex rel. Dispatch Printing Co., v. Wells* (1985), 18 Ohio St. 3d 382, 18 OBR 437, 481 N.E. 2d 632.

In the *Dispatch Printing Co.* case, the Ohio Supreme Court allowed a writ of mandamus to compel disclosure of pertinent information from the personnel file of a police officer who was demoted, including the order of demotion. *Id.* at 384, 18 OBR at 438, 481 N.E. 2d at 634. By way of dicta, the court made the following observation:

"However, we do note that all of the information which may be contained in Thompson's personnel file may not necessarily be subject to public disclosure. Thompson's personnel file may very well contain documents which are neither required to be maintained by law, nor are necessary to respondents' execution of their duties and responsibilities. Any such information would clearly be outside the scope of R.C. 149.43 and not subject to public disclosure." *Id.* at 385, 18 OBR at 439, 481 N.E. 2d at 634.

The information possessed by the Parma Board concerning Ginebaugh's misconduct was critical to the execution of the board's duties and responsibilities. It was subject to public disclosure. The existence of the remedy of a writ to compel disclosure of the information does not serve to validate a non-disclosure clause which by its terms purports to require resort to that remedy.

Appellant's response to appellees' argument that the non-disclosure clause required appellees to conceal felonious conduct (gross sexual imposition) in violation of R.C. 2921.22[5] is that said statute requires only that knowledge of the commission of a felony be reported to law enforcement authorities, not school boards. Appellant's argument is not well-taken. The non-disclosure clause was illegal *per se* in the respect that it purported to suppress information concerning the commission of felonies.

Appellant's first assignment of error has no merit.

## II

Appellant's second and fourth assignments of error are interrelated and will be discussed simultaneously:

"The lower court erred in granting summary judgment to defendants. The within claim is not based upon libel, slander or defamation, and is therefore inapplicable to *New York Times* v. *Sullivan* [(1965), 376 U.S. 254]."

"The lower court erred in granting summary judgment on the basis of a one-year statute of limitations violation. The plaintiff's complaint is not styled as an action in libel, slander, or defamation, but rather in breach of contract, wrongful death, and negligence. Moreover, discovery of the breach did not occur until February 1986."[6]

Appellant's arguments are directed to the third and fourth causes of action of appellant's Third Amended Complaint. These claims are somewhat inartfully drafted.[7] Appellees assert that the "gist" of the claims set forth

---

[5] R.C. 2921.22 provides in part that:

"(A) No person, knowing that a felony has been or is being committed, shall knowingly fail to report such information to law enforcement authorities."

[6] Appellant failed separately to argue the proffered fourth assignment of error.

Although the court therefore could decline to consider it per Loc. App. R. 13(A) of the Eighth Appellate District, since it is interrelated with the appellant's second assignment of error, the court will include it in its deliberation.

[7] Count Three, paragraph 18, Third Amended Complaint:

in counts three and four is defamation. Appellees maintained on summary judgment that Phillip Ginebaugh was a public official, that the statements of appellee Smallwood were true, and that the statements were not made with actual malice.

Appellant's claims for damages for loss of Ginebaugh's reputation sound in defamation. To the extent that appellant claimed defamation the claim fails both as untimely[8] and upon its merits. The matter properly was subject to disposition upon a motion for summary judgment. *Anderson* v. *Liberty Lobby, Inc.* (1986), 477 U.S. 242. Although appellant had no burden of proof in resisting the motion for summary judgment, appellant had a burden of rebuttal to supply evidentiary materials supporting her position. *Whiteleather* v. *Yosowitz* (1983), 10 Ohio App. 3d 272, 10 OBR 386, 461 N.E. 2d 1331, paragraph one of the syllabus. Having failed to rebut appellees' evidence that Phillip Ginebaugh was a public official, that the disclosure against him was true, and that the disclosure was made without actual malice, appellant's claim fails on its merits as a claim for slander.

Appellant maintains that the third and fourth causes alleged in the Third Amended Complaint assert claims for infliction of emotional distress. Such claims certainly constituted a main component of those alleged causes, although it is unclear whether appellant sought relief for negligent or intentional infliction of emotional distress. When a plaintiff's complaint fails to allege a specific theory of liability and the evidence presented with a defense motion for summary judgment removes the defendants from liability under the general rule of law, the plaintiff cannot rest upon the mere allegations set forth in his pleadings,[9] but must present specific facts showing that there exists a genuine issue for trial. *Duritsky* v. *Koppers Co., Inc.* (June 8, 1978), Cuyahoga App. No. 37239, unreported; *Rodger* v. *McDonald's Restaurants of Ohio, Inc.* (1982), 8 Ohio App. 3d 256, 8 OBR 347, 456 N.E. 2d 1262.

---

"18. Plaintiff states further that the aforesaid conduct of the defendants, jointly and/or severally, was in reckless disregard of the duties which said defendants owed the plaintiff herein, or were otherwise negligent in the breach of [their] duties to the plaintiff so as to proximately cause the plaintiff to sustain emotional distress and severe mental anguish, humiliation, loss of reputation in the community, embarrassment, and further was caused to sustain disparagement of his occupational reputation, all to his detriment in the amount of Two Million Dollars ($2,000,000.00)."

Count Four, paragraph 20, Third Amended Complaint:

"20. Plaintiff states further that as a direct and proximate result of the aforesaid negligence of the defendants, jointly and/or severally, the plaintiff was caused to sustain loss of employment, loss of retirement, and other or similar benefits, and loss of reputation both individually and as a teacher and athletic coach employed within a public school system, all to his detriment in the amount of Two Million Dollars ($2,000,000.00)."

[8] R.C. 2305.11(A) provides that an action for slander must be brought within one year after the cause thereof accrues.

[9] Civ. R. 56(E) provides in pertinent part that:

"* * * When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleadings, but his response, by affidavit or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him."

The evidentiary materials accompanying appellees' motion for summary judgment removed appellees from liability under either a theory of negligent infliction of emotional distress or a theory of intentional or reckless infliction of emotional distress. The appellant has failed to state what factual issues would support an action for infliction of emotional distress under either theory. In fact the fallacy of appellant's argument under either theory is only too apparent. Having failed to substantiate the bare allegation that it was appellee Smallwood's disclosure, as opposed to Ginebaugh's independent misconduct in propositioning a female Lorain student and leaving his job to get drunk, that led to Ginebaugh's termination from the Lorain City Schools and depression and suicide, there is an utter failure of proof of proximate cause.[10]

There is no dispute that a cause of action may be stated for negligent infliction of serious emotional distress without a contemporaneous physical injury. *Schultz* v. *Barberton Glass Co.* (1983), 4 Ohio St. 3d 131, 4 OBR 376, 447 N.E. 2d 109 (object from truck hit windshield of motor vehicle). Such emotional injuries must be both serious and debilitating to a reasonable person. *Paugh* v. *Hanks* (1983), 6 Ohio St. 3d 72, 6 OBR 114, 451 N.E. 2d 759 (three cars collided into plaintiff's house or fence at different times).

A claim may also be stated for the intentional or reckless infliction of serious emotional distress:

"One who by extreme and outrageous conduct intentionally or recklessly causes serious emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm. * * *" *Yeager* v. *Local Union 20* (1983), 6 Ohio St. 3d 369, 6 OBR 421, 453 N.E. 2d 666, syllabus.

"In order to recover damages for the intentional infliction of serious emotional distress four elements must be proved: a) that the actor either intended to cause emotional distress or knew or should have known that actions taken would result in serious emotional distress to the plaintiff; b) that the actor's conduct was extreme and outrageous, that it went beyond all possible bounds of decency and that it can be considered as utterly intolerable in a civilized community; c) that the actor's actions were the proximate cause of the plaintiff's psychic injury; and d) that the mental anguish suffered by plaintiff is serious and of a nature that no reasonable person could be expected to endure it." *Pyle* v. *Pyle* (1983), 11 Ohio App. 3d 31, 11 OBR 63, 463 N.E. 2d 98, paragraph two of the syllabus.

Where a physician negligently revealed to an employer that a plaintiff had undergone alcohol rehabilitation, there was a negligent invasion of privacy due to the physician's breach of his duty to maintain the confidence of his patient. *Prince* v. *St. Francis-St. George Hosp., Inc.* (1985), 20 Ohio App. 3d 4, 20 OBR 4, 484 N.E. 2d 265. In the instant case, in view of this court's determination that the non-disclosure clause in the parties' settlement agreement was of no force and effect, the conclusion follows that appellee Smallwood's disclosure violated no such duty owed to Ginebaugh.

Furthermore, in light of its accuracy, there was nothing extreme,

---

[10] It is also noteworthy that the content of appellee Smallwood's disclosure to Lorain Board President Dayka, an incident of "tickling," had been disclosed and discussed by Ginebaugh during his interviews for employment with the Lorain City Schools.

outrageous, indecent or intolerable about the limited, confidential communication between appellee Smallwood and Lorain Board President James Dayka in this case. Appellant made no showing that the disclosure was the proximate cause of any psychic injuries Ginebaugh may have suffered. Finally, reasonable minds could only conclude that Ginebaugh was not a person so reasonably constituted as to be unable to endure any mental anguish that conceivably could flow from the disclosure in this case.

For the foregoing reasons, appellant's second and fourth assignments of error are not well-taken.

### III

Appellant's third assignment of error is that:

"The trial court erred in granting summary judgment on the basis that the plaintiff's contractual claims are not binding upon defendants Smallwood and Karns individually."

The short answer to appellant's contention is that since the nondisclosure clause of the parties' separation agreement was invalid no contract claims can be enforced against *any* of the appellees.

In the court below, appellees argued that appellees Karns and Smallwood were not individual parties to the separation agreement between Phillip Ginebaugh and the Parma Board. Inasmuch as appellant appears to concede this point, the court concludes that since the individual appellees were not formal parties to the agreement they could not have been subject to liability upon that basis. See *V.I.P. Corp.* v. *Sommers* (Jan. 27, 1972), Cuyahoga App. No. 30781, unreported, at 3.

Appellees also argued that if contractual liability existed in this case, it would attach only to the Parma Board as a corporate entity, not to its individual members. A board of educa-

tion is a body politic and corporate and, as such, is capable of suing and being sued. R.C. 3313.17. A board of education is to be distinguished from its individual members and an action against a board must be brought against the board in its corporate capacity, not against its individual members. *Halliday* v. *Marchington* (1932), 44 Ohio App. 132, 14 Ohio Law Abs. 56, 184 N.E. 698, paragraph one of the syllabus. Accordingly, this court concludes that even if appellant's breach of contract claim was viable it would not lie as against the individual appellee board members.

Although appellant suggests that appellees Karns and Smallwood might be held liable if they "intentionally induced" a breach of contract, the court does not understand appellant to have pleaded a theory of intentional interference with contract. The court will not entertain the introduction of a new theory of liability for the first time on appeal. Regardless, the court finds that such a theory of liability is bereft of any factual support whatsoever in the record.

Accordingly, appellant's third assignment of error is without merit.

### IV

Appellant's fifth assignment of error is that:

"The lower court erred in granting summary judgment on the basis that the causes of action brought by the plaintiff did not survive his death, and could, therefore, not be maintained by his estate."

Appellees argued in the court below that appellant's contract claim was not viable, appellant's tort claim was for defamation, thus, no grounds existed for a wrongful death action and, accordingly, none of appellant's claims survived Phillip Ginebaugh's death. As noted at the outset of the opinion, appellant failed to oppose appellees' motion for summary judgment

and supplied no legal analysis opposing the foregoing contentions.

Appellant agrees with the appellees that defamation actions do not survive the death of either party, R.C. 2311.21,[11] *Oakwood* v. *Makar* (1983), 11 Ohio App. 3d 46, 11 OBR 79, 463 N.E. 2d 61 (slander), but alleges that claims for breach of contract, tortious interference with contract, and infliction of emotional distress survived the death of Phillip Ginebaugh.

Appellant's essential contention is that appellees so breached or interfered with the non-disclosure clause of the parties' separation agreement as to inflict upon Phillip Ginebaugh not only the monetary damage attendant to his loss of employment with the Lorain City Schools, but such severe emotional distress as to disable him and drive him to suicide. Appellant maintains that the contract claims are causes of action which survive at common law and may be brought consistently with R.C. 2305.21,[12] notwithstanding the death of Phillip Ginebaugh. Appellant disputes appellees' contention that a "psychic" injury does not survive the death of the person upon whom it was inflicted, relying on Ohio's recognition of infliction of emotional distress as an independent tort. Appellant concludes that R.C.

2125.01[13] governs the wrongful death claim alleged.

Appellant's position regarding survival of the causes alleged is sound. As a general rule contract claims survive the death of a plaintiff. Moreover, Ohio has recognized the viability of actions for psychic injury in part because the danger for illusory claims for mental distress is no greater than in cases of physical injury, *Schultz* v. *Barberton Glass Co.* (1983), 4 Ohio St. 3d 131, 134, 4 OBR 376, 378, 447 N.E. 2d 109, 111, and in part due to "* * * the modern advances made in medical and psychiatric science." *Paugh* v. *Hanks* (1983), 6 Ohio St. 3d 72, 74, 6 OBR 114, 116, 451 N.E. 2d 759, 762. Implicit in the recognition of tort claims for psychic injury of a severe nature is that such claims are claims for injury to the person which would survive death under R.C. 2305.21.[14]

The parties have cited no authority which conclusively resolves the issue of whether claims for infliction of serious emotional distress survive the death of the person upon whom it was inflicted. In *Foster* v. *McDevitt* (1986), 31 Ohio App. 3d 237, 31 OBR 520, 511 N.E. 2d 403, without specifically addressing the issue, the Montgomery County Court of Appeals apparently concluded that such actions survive death. If a

---

[11] R.C. 2311.21 states:

"Unless otherwise provided, no action or proceeding pending in any court shall abate by the death of either or both of the parties thereto, except actions for libel, slander, malicious prosecution, for a nuisance, or against a judge of a county court for misconduct in office, which shall abate by the death of either party."

[12] R.C. 2305.21 provides that:

"In addition to the causes of action which survive at common law, causes of action for mesne profits, or injuries to the person or property, or for deceit or fraud, also shall survive; and such action may be

brought notwithstanding the death of the person entitled or liable thereto."

[13] R.C. 2125.01 provides in pertinent part that:

"When the death of a person is caused by wrongful act, neglect, or default which would have entitled the party injured to maintain an action and recover damages if death had not ensued, the person who would have been liable if death had not ensued, or the administrator or executor of the estate of such person, as such administrator or executor, shall be liable to an action for damages, notwithstanding the death of the person injured * * *."

[14] See fn. 12, *supra.*

particularly diabolical infliction of emotional distress drives a person to suicide, claims for infliction of that emotional distress would survive the victim's demise.

In light of our previous findings on the merits of appellant's claims, however, the court finds that to the extent the trial court erred in accepting appellees' argument that Ginebaugh's causes of action were abated by his death, such error was harmless.

Appellant's fifth assignment of error therefore is overruled.

*Judgment affirmed.*

DYKE, J., concurs.

PRYATEL, J., concurs in judgment only.