RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 18a0015p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

KEITH CRABBS,

*Plaintiff-Appellant*,

*v.*

No. 17-3854

ZACH SCOTT,

*Defendant-Appellee*.

Appeal from the United States District Court
for the Southern District of Ohio at Columbus.
No. 2:12-cv-01126—Michael H. Watson, District Judge.

Decided and Filed: January 22, 2018

Before: NORRIS, SUTTON, and DONALD, Circuit Judges.

_____

## COUNSEL

**ON BRIEF:** Michael Garth Moore, LAW OFFICES OF MICHAEL GARTH MOORE, Columbus, Ohio, for Appellant. Nick A. Soulas, Jr., FRANKLIN COUNTY PROSECUTOR'S OFFICE, Columbus, Ohio, for Appellee.

_____

## OPINION

_____

SUTTON, Circuit Judge. Keith Crabbs filed a § 1983 claim alleging that the local police violated his Fourth (and Fourteenth) Amendment right to be secure from unreasonable searches. But he died before the case could be resolved. Anne Crabbs, Keith's mother and the personal representative of his estate, filed a motion to substitute as a party. The district court found that Keith's death extinguished his claim and dismissed the case. Because Keith's § 1983 action

qualifies as a "cause[] of action for . . . injuries to the person" under the Ohio survivorship statute and thus outlasts his death, we reverse and remand.

I.

In December 2010, Keith Crabbs surrendered to the Franklin County Sheriff on charges of voluntary manslaughter.  After spending a night in jail, the court released him on bond.  Keith's trial did not begin until March 2012.

Two days into the trial, the court revoked Keith's bond after he arrived late and quarreled with a witness outside of the courthouse.  Ohio law requires county sheriffs to collect a DNA specimen of anybody "arrested on or after July 1, 2011, for a felony offense."  Ohio Rev. Code § 2901.07(B)(1)(a).  The jail officials failed to collect a sample of Keith's DNA when they took him back into custody, triggering an "ID hold" on him.  R. 82-1 at 2.  At the conclusion of trial, the jury acquitted Keith.  But because of the hold, the County Sheriff required Keith to undergo a DNA cheek swab before releasing him.

Keith filed a § 1983 action against Sheriff Zach Scott in his official capacity alleging that the Sheriff's DNA-collection and ID-hold policies, when applied to acquitted defendants, violate the Fourth Amendment.  Before the litigation came to an end, however, Keith died.  Anne Crabbs, Keith's mother and the personal representative of his estate, moved the court to allow her to take Keith's place under Civil Rule 25(a)(1). The district court denied the motion and dismissed the case.  Anne appeals.

II.

"If a party dies and the claim is not extinguished, the court may order substitution of the proper party."  Civil Rule 25(a)(1).  We tend to review substitution determinations for an abuse of discretion.  *See Bauer v. Commerce Union Bank*, 859 F.2d 438, 441 (6th Cir. 1988).  But a district court necessarily abuses its discretion when it commits an error of law.  *United States v. Taylor*, 286 F.3d 303, 305 (6th Cir. 2002).  The district court denied Anne's motion to substitute because it determined that Keith's death extinguished his claim.  All that was at issue then, and

all that is at issue now, is whether Keith's claim survived his death. That is a question of law. Fresh review applies. *See Bailey v. City of Ann Arbor*, 860 F.3d 382, 385 (6th Cir. 2017).

To determine whether § 1983 claims survive, we first look to federal law for an applicable rule of decision. *Robertson v. Wegmann*, 436 U.S. 584, 588–95 (1978). If no suitable federal rule exists, we use the law of the forum state to the extent it is "not inconsistent with the Constitution and laws of the United States." *Id.* at 588; 42 U.S.C. § 1988.

No federal statute or rule says anything about the survivorship of § 1983 claims.

But Ohio law speaks to the issue. It contains a survivorship statute, which provides:

> In addition to the causes of action which survive at common law, causes of action for mesne profits, or injuries to the person or property, or for deceit or fraud, also shall survive; and such actions may be brought notwithstanding the death of the person entitled or liable thereto.

Ohio Rev. Code § 2305.21. The question, then, is whether Keith's lawsuit amounts to a "cause[] of action for . . . injuries to the person." *Id.* If yes, his mother may pursue his cause of action. If no, the lawsuit ended with his death.

*Wilson v. Garcia*, 471 U.S. 261 (1985), offers guidance in answering the question. At issue was how to characterize § 1983 claims under state statutes of limitations. In answering the question, *Wilson* said three useful things.

*First*, the characterization of § 1983 as a cause of action is itself a question of federal law. *Id.* at 269–70. While we may look to state procedural rules, federal standards dictate the essential elements of a § 1983 claim and, in turn, which procedural rules to apply. *See id.*

*Second*, all § 1983 claims must be characterized in the same way. *Id.* at 271–75. Section 1983 claims span an array of topics, including discrimination in public employment, illegal arrests and searches, deprivations of liberty and property without due process, violations of freedom of speech and religion, and deliberate indifference to the medical needs of inmates, just to name a few. *See* Fallon et al., Hart and Wechsler's The Federal Courts and The Federal System 750 (7th ed. 2003). Even when looked at individually, some of these constitutional claims have no precise counterpart in state law, rendering decision making by analogy inherently

imperfect. *Wilson*, 471 U.S. at 272–73. Analyzing the particular facts of each § 1983 action "inevitably breeds uncertainty and time-consuming litigation that is foreign to the central purposes of § 1983." *Id.* at 272. As a result, courts should adopt a straightforward and uniform characterization of § 1983 claims. *Id.*

*Third*, § 1983 actions are best characterized as personal injury actions. *Id.* at 280. The evils that Congress addressed in the Civil Rights Act of 1871 sounded in tort and are most analogous in the main to tort actions. *Id.* at 277.

For these reasons, the *Wilson* Court held that all § 1983 actions brought in New Mexico were governed by that State's 3-year statute of limitations for "injury to the person," *id.* at 280, the same language as the Ohio survivorship statute.

*Owens v. Okure*, 488 U.S. 235 (1989), applied a similar approach in a 9-0 decision. It addressed a common scenario in which a State provides one statute of limitations for intentional torts and a residual limitations period for other personal injuries. *Id.* at 236. Invoking the virtues of uniformity, administrability, and predictability, *Owens* held that all § 1983 claims were governed by the residual statute of limitations for personal injuries, even those stemming from intentional conduct. *Id.* at 249–50.

Since these decisions, Congress has gone further in the direction of uniformity. It has provided a single, 4-year federal statute of limitations for all civil rights actions, thereby preempting all state rules. 28 U.S.C. § 1658. Regrettably for us, it has not done the same thing for survivorship issues.

Even so, *Wilson* and *Owens* tell us what we need to know to resolve this case. Neither decision cabined its rationale to state statutes of limitation. And if survivorship statutes are not siblings of time-bar statutes, they are at least cousins. Together they seek to balance repose and finality with the substantive policies served by enforcement of the cause of action. *See* Dobbs' Law of Torts §§ 241 (Statutes of Limitation: Foundational Principles and Rationales), 372 (Wrongful Death and Survival Actions) (2d ed. 2017).

In reaching this conclusion, we agree with the Seventh Circuit. It held that characterizing all § 1983 claims as personal injury actions was "equally important" in the survivorship context and that it would be "anomalous" to draw a distinction between survivorship statutes and statutes of limitation. *Bennett v. Tucker*, 827 F.2d 63, 67–68 (7th Cir. 1987).

Pulling all of this together, let's review the bidding: § 1983 is silent on survivorship. Ohio has a survivorship statute. The Ohio law guides us here. Keith's Fourth Amendment claim is a personal injury action under *Wilson* and *Owens* and thus qualifies as a "cause[] of action for . . . injury to the person" under the Ohio statute and survives his death. Nothing about this conclusion interferes with federal law. Because Keith's claim survives his death, the district court may substitute Anne in his place under Civil Rule 25(a)(1).

Sheriff Scott offers a fair response. He maintains that, under the Ohio survivorship statute, personal injury actions must arise from physical harm. Because Keith's cheek-swab claim arose from an invasion of his privacy, not physical harm, death extinguished the claim and the district court has no authority to substitute a new party. We are not persuaded.

The Ohio Supreme Court, the authoritative voice on Ohio law, has never established a physical injury requirement under the Ohio survivorship statute. And the language of the statute, "injury to the person," does not suggest such a requirement. This language normally requires the invasion only of a personal, not a physical, right and thus permits claims premised on psychological harm. *See Injury*, Black's Law Dictionary (10th ed. 2014) (defining "personal injury" among other things as "[a]ny invasion of a personal right, including mental suffering"); Restatement (Second) of Torts § 7 (defining "injury" as "the invasion of any legally protected interest of another").

Many State High Courts have rejected a physical-harm requirement in the context of survivorship (and similar) laws that contained identical or nearly identical language. *See, e.g.*, *Gressman v. State*, 323 P.3d 998, 1006–07 (Utah 2013); *Harrison v. Loyal Protective Life Ins. Co.*, 396 N.E.2d 987, 989–90 (Mass. 1979); *Gray v. Wallace*, 319 S.W.2d 582, 584–85 (Mo. 1958); *White v. Safe Deposit & Tr. Co.*, 118 A. 77, 80 (Md. 1922). In *Bennett*, the Seventh Circuit case, the court preserved a procedural due process claim as "injury to the person" under

the Illinois Survival Act, which is about as ephemeral as constitutional injuries come. *Bennett*, 827 F.2d at 65, 68; 755 Ill. Comp. Stat. Ann. 5/27-6.

The decisions of Ohio's lower courts face in two directions. Some cases impose a physical injury requirement in interpreting "injuries to the person." *Witcher v. Fairlawn*, 680 N.E.2d 713, 715 (Ohio Ct. App. 1996); *Vill. of Oakwood v. Makar*, 463 N.E.2d 61, 64–65 (Ohio Ct. App. 1983). But other cases say that this language encompasses "psychic injury" including sexual harassment and intentional infliction of emotional distress. *Bowman v. Parma Bd. of Educ.*, 542 N.E.2d 663, 670–71 (Ohio Ct. App. 1988); *Kelly v. Greene*, No. 66359, 1994 WL 547767, at *2–3 (Ohio Ct. App. 1994). These Janus-faced intermediate court decisions offer no basis for thinking that the Ohio Supreme Court would reject our approach.

On top of all this, *Wilson* and *Owens* underscored the need for a simple and administrable characterization of § 1983 claims under state law. Requiring courts to go pleading by pleading and determine whether each civil rights case arises in greater part from physical harm than psychic or dignitary harm would largely undo the benefit of characterizing all § 1983 claims as personal injury actions in the first place. We think the appropriate level at which to generalize a § 1983 claim under state law is as a personal injury action, sounding in tort, and nothing further.

We recognize that our decision parts way with a prior unpublished decision of this court, *Tinney v. Richland Cty.*, 678 F. App'x 362 (6th Cir. 2017). It held that a § 1983 malicious prosecution claim did not survive under the Ohio statute. *Id.* at 368–69. But the decision addressed survivorship only in dicta after holding that the constitutional claims lacked merit. *Id.* The analysis is brief and never mentions, let alone distinguishes, *Wilson*, *Owens*, *Bennett*, or the contrary state law authority discussed above. Unpublished decisions bind only the parties to the instant case. *FDIC v. Dover*, 453 F.3d 710, 715 (6th Cir. 2006).

For these reasons, we reverse and remand to the district court for further proceedings.