J-A03021-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| JAMES DIETZ, ADMINISTRATOR OF THE ESTATES OF JOHN KENNETH LALLO, SR., DECEASED AND DIANA CHRISTINE CEO LALLO, DECEASED, JOHN K. LALLO, JR., MELISSA LALLO-JOHNSON, ERICA HOAR AND SAMANTHA LALLO | : : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : : : | |
| v. | : : : | No. 645 EDA 2021 |
| | : : | |
| AVCO CORPORATION, LYCOMING ENGINES, AVCO LYCOMING-TEXTRON WILLIAMSPORT, CONTINENTAL MOTORS, INC., TELEDYNE CONTINENTAL MOTORS, INC., BENDIX CORPORATION, UNISON INDUSTRIES, LLC, UNISON INDUSTRIES, INC., ALLIED-SIGNAL, INC., HONEYWELL INTERNATIONAL, INC., INTERFACE PERFORMANCE MATERIALS, INC., INTERFACE SOLUTIONS, INC., NEW ISI, INC. AND QUALITY AIRCRAFT ACCESSORIES, INC. | : : : : : : : : : : : : : : : : | |
| | : : : : | |
| APPEAL OF: CONTINENTAL MOTORS, INC. (INCORRECTLY ALSO NAMED AS TELEDYNE CONTINENTAL MOTOR, INC., IN THIS ACTION) | : : : : : : | |

Appeal from the Judgment Entered January 14, 2021
In the Court of Common Pleas of Philadelphia County Civil Division at No(s):
No. 150702501

BEFORE:  STABILE, J., DUBOW, J., and McCAFFERY, J.

MEMORANDUM BY DUBOW, J.:                    **FILED MAY 26, 2022**

Appellant, Continental Motors, Inc. ("Continental"), appeals from the

January 14, 2021 entry of judgment in this products liability action brought

by the representative of the estates of John Kenneth Lallo, Sr. ("Mr. Lallo") and Diana Christine Ceo Lallo ("Mrs. Lallo") (collectively "the Lallos"), and their surviving children, Melissa Lallo-Johnson, Erica Hoar, and Samantha Lallo (collectively "Appellees"). After careful review, we affirm the jury's verdict and damages award. Having concluded, however, that the trial court erroneously awarded delay damages for Appellees' survival claims, we vacate the judgment in favor of Appellees', and remand for the trial court to reduce the judgment by the amount of delay damages it awarded for Appellees' survival claims.

On August 18, 2013, Mr. Lallo, a licensed pilot, and Mrs. Lallo arrived at an airport in Kansas City, Missouri, for a return flight to their home in Ohio. Mr. Lallo fueled his aircraft and conducted routine pre-flight inspections. After receiving clearance from air traffic control, the Lallos' aircraft proceeded down the runway and began its ascent before its engine suddenly lost power. The aircraft momentarily stopped climbing and started to descend, prompting Mr. Lallo to declare an emergency situation.

Mr. Lallo was then able to restore power to the engine, and the aircraft began a second ascent. About 12 seconds later, Mr. Lallo reported that he was "okay." Shortly thereafter, Mr. Lallo again reported an emergency and an air traffic controller cleared him to land. Mr. Lallo was, however, unable to land the aircraft safely; it crashed in a field not far from the airport, killing the Lallos upon impact.

Appellees commenced this design defects products liability action against numerous defendants, including Continental as successor in interest to the manufacturer of the engine on the Lallos' aircraft.[1]  Relevantly, Appellees asserted claims for strict liability, negligence, breach of warranty, and negligent infliction of emotional distress.  Primarily at issue was the cause of the loss of power to the aircraft's engine.[2]

Prior to trial, Continental filed a Motion *in Limine* requesting that the trial court apply the substantive products liability law of Ohio to this action, and, in particular, Ohio's ten-year statute of repose, which, if applied, would bar Appellees' products liability claims.  The trial court denied the motion, concluding instead that Alabama products liability law applied.[3]

_____

[1] In December 1986, Appellant purchased the assets of the general aviation ignition system product line from the Bendix division of Allied Signal.  The engine on the Lallos' aircraft was manufactured in New York in 1979 by Bendix.

[2] Appellees alleged that the single drive dual magneto design in the engine was defective in that it is prone to single point failures, such as rotor drag, and that a failure of the magneto attachment point caused the engine to change timing, which resulted in the Lallos' engine losing power.  **See** Trial Ct. Op., 5/24/21, at 3.  Continental asserted that the Lallos' engine lost power because water contaminated its fuel through penetration into the plane's wing fuel fill caps.  **See id.**

[3] Appellant's principal place of business is Mobile, Alabama.

The jury trial commenced on July 8, 2019,[4] and concluded more than one month later on August 16, 2019. At the close of evidence, the court submitted to the jury eighteen special interrogatories on the verdict sheet. Following their deliberation, the jury found in favor of Appellees. The jury concluded that: (1) the engine's single drive dual magneto, a component of the engine's ignition system,[5] was defectively designed and that this defect was the factual cause of the crash that killed the Lallos; (2) Continental's negligence was a factual cause leading to the Lallos' deaths; (3) the magneto was changed or modified by non-party Quality Aircraft Accessories ("QAA") after it left Continental's place of manufacture but before the Lallos' crash, and that this change or modification contributed to the accident; and (4) Mr. Lallo's negligence was a contributing factor to the crash. The jury did not find that Continental's conduct under a failure to warn theory was a factual cause of the crash. The jury determined that Continental was 70% at fault and that Top Gun Aviation, QAA, and Mr. Lallo were each 10% responsible, and awarded $2,000,000 to each estate for wrongful death and $2,500,000 to each estate for survival damages.[6]

---

[4] This was the second trial in this matter. The first trial ended in a mistrial when the number of jurors fell below 12.

[5] **See** N.T., 7/18/19 PM, at 433-35 (testimony by Appellees' expert, Mark Seader, explaining magneto function in an airplane engine).

[6] Neither Top Gun Aviation nor QAA, entities who had performed work on the Lallos' aircraft, were parties to the litigation. However, based on the facts of
*(Footnote Continued Next Page)*

Appellant filed a timely Post-Trial Motion, which the trial court denied in part and granted in part to mold the verdict to reflect the jury's finding that Mr. Lallo negligence contributed to the accident.[7] Appellees then filed a Motion for Delay Damages.

While Appellees' Motion for Delay Damages was pending, Continental appealed from the jury's verdict. On July 27, 2020, the trial court denied Appellees' motion for delay damages without prejudice in light of the pendency of Continental's appeal.

Appellees then filed an application to quash Continental's appeal as interlocutory, which this Court granted on October 28, 2020. *See Dietz v. AVCO*, No. 1411 EDA 2020 (Pa. Super. filed Oct. 28, 2020).

Following remand, on October 30, 2020, Appellees re-filed their Motion for Delay Damages. The court held argument on the motion, and, on January 14, 2021, the trial court awarded Appellees damages for delay in the amount of $1,390,077.44 and entered judgment in the total amount of $9,940,077.44.

This appeal followed. Both Appellant and the trial court have complied with Pa.R.A.P. 1925.

_(Footnote Continued)_ ————————————

this case and Appellant's defenses of superseding/intervening causes, they appeared on the verdict sheet.

[7] The trial court left the jury's $4,500,000 award to the Estate of Diana C. Lallo to stand in full and reduced the award to the Estate of John K. Lallo, Sr. by 10% to $4,050,000 to reflect the jury's finding of his comparative fault.

Appellant raises the following six issues on appeal:

I.    Did the trial court err in determining that Alabama law applied to questions of liability and that [Appellees'] claims are not barred by the Ohio statute of repose applicable to products liability actions?

II.   Did the trial court err in determining that Ohio law did not bar [Appellees'] claims and/or their right to recover damages?

III.  Did the trial court err in determining that Alabama law did not bar [Appellees'] claims?

IV.  Did the trial court err in determining that the General Aviation Revitalization Act of 1994 ("GARA") did not bar [Appellees'] claims?

V.   Did the trial court err in determining that Continental was not entitled to a new trial?

VI.  Did the trial court err in determining that [Appellees'] were entitled to recover delay damages?

Continental's Brief at 4-5.

## Standard of Review

Continental's issues challenge the trial court's denial of Continental's post-trial motion for judgment notwithstanding the jury's verdict ("JNOV"). We review the denial of a request for JNOV for an error of law that controlled the outcome of the case or an abuse of discretion. *Hutchinson v. Penske Truck Leasing Co.*, 876 A.2d 978, 984 (Pa. Super. 2005). In this context, an "[a]buse of discretion occurs if the trial court renders a judgment that is manifestly unreasonable, arbitrary or capricious; that fails to apply the law; or that is motivated by partiality, prejudice, bias or [ill will]." *Id.*

When reviewing the denial of a request for JNOV, the appellate court examines the evidence in the light most favorable to the verdict winner. ***Thomas Jefferson Univ. v. Wapner***, 903 A.2d 565, 569 (Pa. Super. 2006) (citation omitted). Thus, "the grant of [JNOV] should only be entered in a clear case[.]" ***Id.*** (citation omitted).

There are two bases upon which a movant is entitled to JNOV: "one, the movant is entitled to judgment as a matter of law, and/or two, the evidence was such that no two reasonable minds could disagree that the outcome should have been rendered in favor of the movant." ***Rohm and Haas Co. v. Continental Cas. Co.***, 781 A.2d 1172, 1176 (Pa. 2001) (citation omitted). When an appellant challenges a jury's verdict on this latter basis, we will grant relief only "when the jury's verdict is so contrary to the evidence as to shock one's sense of justice." ***Sears, Roebuck & Co. v. 69th St. Retail Mall, L.P.***, 126 A.3d 959, 967 (Pa. Super. 2015).

## Issue I: Choice of Law

In its first issue, Continental alleges that the trial court erred in applying Alabama and not Ohio product liability law to Appellees' claims. Continental's Brief at 24-31.

To determine whether Ohio or Alabama law applies to the current dispute, we apply Pennsylvania choice of law principles, which use a combination of the "government interest" analysis and the "significant relationship" approach of Section 145 of the Restatement (Second) of Conflicts. ***Griffith v. United Air Lines, Inc.***, 203 A.2d 796, 805-06 (Pa.

1964). By using this hybrid test, courts can analyze "the policies and interests underlying the particular issue before the court." *Id.* at 805.

Section 145(2) of the Restatement (Second) of Conflicts sets forth the factors the court should consider in conducting the analysis required under *Griffith*. The factors include: (1) the place where the injury occurred; (2) the place where the conduct causing the injury occurred; (3) the domicile, residence, nationality, place of incorporation, and place of business of the parties; and (4) the place where the relationship, if any, between the parties is centered. Restatement (Second) of Conflict of Laws § 145 (1983).

Under Pennsylvania choice of law rules, we first look to see if a true conflict exists between the states' laws. *Stange v. Janssen Pharm., Inc.* 179 A.3d 45, 65 (Pa. Super. 2018). "A true conflict occurs where an analysis of the policies underlying each of the conflicting laws reveals that, in each case, application of the respective state's law would further its corresponding policy. If a true conflict exists, we then proceed to determine which jurisdiction has the greater interests, considering the qualitative contacts of the states, the parties and the controversy." *Id.* (citing *Marks v. Redner's Warehouse Markets*, 136 A.3d 984, 988 (Pa. Super. 2016) (internal citations omitted)).

Choice of law analysis is limited to conflicts of substantive law. *Wilson v. Transport Ins. Co.*, 889 A.2d 563, 571 (Pa. Super. 2005). "Substantive law is the portion of the law which creates the rights and duties of the parties to a judicial proceeding, whereas procedural law is the set of

rules which prescribe the steps by which the parties may have their respective rights and duties judicially enforced." ***Ferraro v. McCarthy-Pascuzzo***, 777 A.2d 1128, 1137 (Pa. Super. 2001).

Continental asserts that both the "governmental interest" and the "significant relationship" analyses required the court to apply Ohio law to Appellees' liability and damages issues. Continental's Brief at 26. It argues that Alabama has no interest in applying its product liability laws to a lawsuit about a product that is not manufactured or designed in Alabama and used by parties who reside in Ohio. The lawsuit further involves conduct of the parties that occurred in Ohio. ***Id.*** It also argues that Alabama has no contacts with this case other than as Continental's principal place of business. ***Id.*** at 30. It further argues that Ohio has a strong interest in applying its 10-year statute of repose to product liability claims involving injuries to its residents based on a product that was stored, maintained, and used in Ohio prior to the accident, and that Alabama has no interest in applying its "plaintiff-friendly" rule to claims arising from the deaths of Ohio residents outside of Alabama. ***Id.*** at 26, 29-30-31.

Instantly, the trial court considered the laws of Ohio and Alabama[8] to determine whether there was a true conflict between them. The court

_____

[8] The court also considered whether the law of Pennsylvania or Missouri, the site of the accident, applied and determined that they did not. Since Appellant has not asserted that the court erred in declining to apply
*(Footnote Continued Next Page)*

concluded that it was "readily apparent" that a true conflict exists between Ohio's law, which has a statute of repose for product liability cases, and the law of Alabama, which does not have a statute of repose. Trial Ct. Op., 5/23/18, at 3. Thus, the court proceeded to consider which state has the most significant relationship to the parties and the accident to determine which state's substantive law applies. The trial court concluded that Continental failed to show that Ohio has a more significant relationship to the accident than Alabama. In particular, the court concluded that Continental's argument that Ohio's statute of repose, which is intended to benefit Ohio-based businesses by limiting their liability, was "disingenuous, as Ohio clearly lacks any interest in the application of its statutory product liability laws to limit an out-of-state corporation's liability." *Id.* at 5.

The court explained that it found, instead, that Alabama had the "most significant and qualitative relationship to this litigation" based on

> the nature of [Continental's] business, which places products into the stream of commerce from its home state to places all over the United States and around the world. On its website, [Continental] claims it "is a global leader in General Aviation" and "stands for excellence in products and customer service, with more than a century of reliability and innovation as our foundation." As a manufacturer of such products, it is liable for defects causing injury regardless of where they occur. Since [Continental] is based in Alabama, employs people within the state, pays taxes within the state, seeks business to be done within that state by soliciting customers throughout the world

_____

*(Footnote Continued)*  —————————————

Pennsylvania or Missouri law, we will not discuss the court's reasons for excluding the laws of those states.

- 10 -

and is manufacturing, assembling[,] and then shipping products from that state. Clearly [Continental] has significant and highly qualitative contact with Alabama.

*Id.* at 6. With respect to the statute of repose, the court opined that "Alabama[,] in not imposing a statute of repose in regard to strict liability claims[,] has an interest in regulating businesses conducting activities within its borders for the time their products are in use." *Id.* The court, therefore concluded that Alabama was the jurisdiction with the "most significant interest in defining the legal consequences in the event [that Continental] is held liable to [Appellees]."[9] *Id.*

We agree with the trial court's analyses and conclusions. The trial court thoroughly and comprehensively considered and balanced each states' interest in the application of its laws and determined that Alabama had the most significant interest. Thus, the court properly applied Alabama product liability and negligence laws to Appellees' claims.

**Issue II: Appellees' Wrongful Death and Survival Claims**

In its second issue, Continental asserts that the trial court erred in not entering JNOV because: (1) the two-year statute of limitations in Ohio's

---

[9] The trial court also considered which state's economic damages laws should apply and concluded that, given the Lallos residence and significant qualitative contacts with Ohio, it would apply Ohio's damages law. Trial Ct. Op., 5/23/18, at 7. Continental has baldly asserted that it was "illogical" for the court to apply Alabama law to Appellees' liability claims but Ohio law to the damages issues. Continental's Brief at 31. Without more specificity, we decline to address this argument.

Wrongful Death Act, Ohio Rev. Code § 2125.01, *et seq.*, bars Appellees' recovery; (2) Appellees' could not, as a matter of law, prevail on their survival claims; and (3) any damages awarded for survival claims based on "pre-impact terror" should be reduced by the amount of fault attributed to Mr. Lallo and the non-parties. Continental's Brief at 32-36. We address these claims *seriatim*.

**The Repose Period in Ohio's Wrongful Death Act Does Not Apply**

First, Continental asserts that, because the trial court determined that Ohio law controls Appellees' damages, the 10-year statute of repose applicable to wrongful death actions involving product liability claims in Ohio's Wrongful Death Act bars Appellees' recovery because it required Appellees to bring their claims within two years of installation of the magneto in the aircraft engine on October 23, 1979. ***Id.*** at 32-34 (citing Ohio Rev. Code § 2125.02(D)(2)(a)). Continental claims that "the time limitations contained in Ohio's wrongful death statute cannot be stripped away from the damages recoverable under the statute." ***Id.*** at 34.

Ohio's wrongful death statute includes a borrowing provision that provides, in relevant part, as follows:

> When death is caused by a wrongful act, neglect, or default in another state or foreign country, for which a right to maintain an action and recover damages is given by a statute of such other state or foreign country, such right of action may be enforced in this state. Every such action shall be commenced within the time period prescribed for the commencement of such actions by the statute of such other state or foreign country.

Ohio Rev. Code § 2125.01.

The trial court considered Continental's claim and, in light of its determination that Alabama substantive law applied, explained as follows:

> [T]he "wrongful acts, neglect, or default" alleged in this lawsuit occurred in Continental's home state of Alabama. Alabama has a wrongful death act, [Ala] Code § 6-5-410, under which [Appellees] would have "a right to maintain an action and recover damages" by statute, with no applicable statute of repose. Thus, under the express terms of § 2125.01 of the Ohio Wrongful Death Act, [Appellees] would be entitled to bring a wrongful death action and recover damages for the plane crash that killed John and Diana Lallo, regardless of any provision of Ohio law to the contrary, including Ohio's statute of repose.

Trial Ct. Op., 5/18/20, at 14.

The court continued by aptly noting that the Ohio Wrongful Death Act's borrowing provision "not only borrows the substantive law of the foreign jurisdiction, *i.e.*, Alabama, it also borrows that jurisdiction's statutes of limitation and repose, by specifically adopting 'the time prescribed for the commencement of such actions by the statute of such other state . . .'" *Id.* at 15 (citing Ohio Rev. Code § 2125.01). Thus, the court concluded that Ohio's Wrongful Death Act had no bearing on Appellees right to recover for wrongful death against Continental. We agree.

**Survival Claims For Negligent Infliction of Emotional Distress**

Continental next asserts that Appellees' survival claims are barred because Appellees did not establish that the Lallos suffered any personal

- 13 -

injury or property damages[10] and, because "pre-impact terror" is not one of the enumerated bases for recovery of damages under Ohio's survival statute, Ohio law does not allow for recovery for "pre-impact terror." Continental's Brief at 34-36.[11]

In Ohio, a survival claim may be brought by a decedent's estate to recover for injuries suffered by the decedent before his death. ***Shinaver v. Szymanski***, 471 N.E.2d 477, 482 (Ohio 1984). Ohio's survival statute provides: "[i]n addition to the causes of action which survive at common law, causes of action for mesne profits, or injuries to the person or property, or for deceit or fraud, also shall survive; and such actions may be brought notwithstanding the death of the person entitled or liable thereto." Ohio Rev. Code § 2305.21. Thus, we must consider whether, in the instant matter, Appellees asserted a claim that Ohio law recognizes as surviving the Lallos' deaths.

This Court's review of Appellees' Third Amended Complaint indicates that at Count Fourteen of the Third Amended Complaint Appellees raised a

_____

[10] It is undisputed that the Lallos did not own the aircraft that crashed resulting in their deaths.

[11] It bears noting that Continental did not argue that the jury erred finding that the Lallos suffered an emotional injury or in determining the amount of the Lallos' non-economic damages, but rather that Ohio's survival statute precluded Appellees' from recovering for the Lallos' emotional harm as a matter of law. Thus, we have not been asked, and need not consider, whether the evidence presented by Appellees to substantiate their emotional distress claim supports the jury's verdict and award.

claim seeking to recover for Negligent Infliction of Emotional Distress. In that claim, Appellees asserted, *inter alia*, that the Lallos "experienced and observed the accident sequence, engine power loss, and [were] within the zone of danger of the accident" and, "[a]s a direct and proximate result of [Continental's] negligence and/or defective products, [the Lallos] suffered emotional injuries during the accident sequence and post-crash fire, which were a direct result of the accident and foreseeable to [Continental]." Third Amended Complaint, 7/14/16, at ¶¶ 303-05.

In Ohio, claims for "psychic" injury or infliction of emotional distress survive the death of the person upon whom the injury or distress was inflicted. *Bowman v. Parma Bd. of Educ.*, 542 N.E.2d 663, 671 (Ohio Ct. App. 1988). Ohio law is, thus, clear, that its survivor statute does not preclude Appellees from recovering, as a matter of law, for the emotional distress suffered by the Lallos prior to their deaths. This claim does not, therefore, garner Continental relief.

**Application of Ohio's Joint and Several Liability Law**

In their final sub-issue, Continental claims that, pursuant to Ohio's statute on joint and several liability, the $5,000,000 total non-economic damages awarded to Appellees for their survival claims should be reduced to $3,500,000 to account for the 30% combined fault attributed to Mr. Lallo and the non-parties. Continental's Brief at 36. In support of this claim, Continental asserts that "Ohio law requires that noneconomic damages be reduced to account for the defendant's proportional share." *Id.* (citing Ohio

Rev. Code § 2307.22(C) which provides, in relevant part, that where the trier of fact determines that more than one person caused the same injury, "each defendant . . . shall be liable to the plaintiff only for that defendant's proportionate share of the compensatory damages that represent noneconomic loss.").

Following our review of the record, including Continental's Post-Trial Motion, its Rule 1925(b) Statement, and the trial court's orders and opinions related thereto, we conclude that Appellant has raised this specific issue for the first time on appeal. Accordingly, it is waived.[12] **See** Pa.R.A.P. 302(a) ("Issues not raised in the trial court are waived and cannot be raised for the first time on appeal.").

## Issue III: Whether Alabama Law Barred Appellees' Claims

In its third issue, Continental challenges the trial court's denial of JNOV asserting that Appellees did not prove their claims that Continental was liable to them under both Alabama's product liability and negligence laws. Continental's Brief at 37-46. Continental asserts two alternative arguments in support of this issue, each with three sub-arguments.

### Negligence

---

[12] Moreover, even if Continental had not waived this issue, apportionment of liability is a procedural issue over which the trial court properly applied Pennsylvania law. Thus, Continental's claim that the court erred in not apportioning liability pursuant to Ohio's joint and several liability principles lacks merit.

First, Continental claims that the trial court erred in not entering JNOV in its favor on Appellees' negligence claims. In particular, Continental asserts that Appellees failed to present expert testimony to prove that Continental was negligent or failed to exercise due care in the design or manufacture of the magneto. Continental's Brief at 43-44.

Under Alabama law, to establish negligence in the product liability context a plaintiff must prove "not only that the product at issue is defective, but also that the manufacturer failed to exercise due care in the product's manufacture, design, or sale." **McMahon v. Yamaha Motor Corp. U.S.A.**, 95 So.3d 769, 772 (Ala. 2012). "The jury must be persuaded that the product at issue is defective before the plaintiff can prevail. **Id.** (emphasis omitted).

<u>Standard of Care</u>

Continental first claims that the court erred in not entering JNOV because Appellees failed to present expert testimony regarding the standard of care applicable to a magneto manufacturer in 1979 or whether Continental breached the standard of care. Continental's Brief at 43-44.

"The Rules of Appellate Procedure state unequivocally that each question an appellant raises is to be supported by discussion and analysis of pertinent authority." **Commonwealth v. Martz**, 232 A.3d 801, 811 (Pa. Super. 2020) (citation and bracketed language omitted). **See** Pa.R.A.P. 2119 (listing argument requirements for appellate briefs). This Court "will

not act as counsel and will not develop arguments on behalf of an appellant. Moreover, when defects in a brief impede our ability to conduct meaningful appellate review, we may dismiss the appeal entirely or find certain issues to be waived." **In re R.D.**, 44 A.3d 657, 674 (Pa. Super. 2012) (citation omitted).

In its Brief, Continental fails to provide an adequate legal framework within which this Court can conduct meaningful appellate review. Although Continental has provided citation to legal authority, our review indicates that the cases to which Continental cites refer generally to the elements of a common-law product liability negligence claim, including the requirement that a plaintiff establish that the product's manufacturer failed to exercise due care. Continental's Brief at 43. Continental has not, however, provided citation to any legal authority explaining the applicable standard of care. Similarly, although Continental has cited to the places in the notes of testimony where Appellees' experts provided opinions supporting Appellees' theory that the magneto was "simply defective because of the existence of single point failures and the use of impulse coupling," **see id.** at 44, because Continental has not set forth the applicable standard of care, this Court is unable to evaluate whether the trial court erred in concluding that the cited testimony, and Appellees' other evidence, fell short of that required to establish the standard of care and a breach thereof. These defects preclude

us from conducting meaningful appellate review. Accordingly, we conclude that this issue is waived.

Substantial Modification of the Magneto by QAA

Next, Continental claims that the trial court erred in declining to enter JNOV because the jury's finding that QAA substantially modified the magneto constituted a superseding and intervening cause of Appellees' harm that precluded them from recovering from Continental under a negligence theory. *Id.* at 45.

Appellees' negligence claims were based on their theory that Continental designed a defective product—the magneto—in 1979 and that the defective design caused the crash that killed the Lallos. The jury agreed that Appellee had negligently designed a defective product. Verdict Sheet at Nos. 1-4. The jury also found that Continental "manufactured, supplied or distributed parts that were replaced, such as the impulse coupling,[13] that are causally related to the harm" suffered by Appellees. *Id.* at No. 7. In light of Continental's negligence, the jury attributed 70% of the liability for the crash to Continental. *Id.* at No. 15.

With respect to QAA's role in bringing about the harm suffered by Appellees, the jury verdict sheet indicates that the jury made the following relevant findings: (1) QAA substantially changed or modified the magneto

_____

[13] QAA installed the replacement impulse coupling spring in July 2013 as part of QAA's engine overhaul.

through the overhaul; (2) the substantial change or modification contributed to the accident; (3) QAA did not negligently overhaul the magneto. *Id.* Nos. 9, 10, 14. In accordance with its findings, the jury concluded that QAA was 10% liable to Appellees for its non-negligent change or modification to the magneto. *Id.* at No. 15.

In addressing this issue, the trial court observed that there was "no evidence that the overhaul [performed by QAA], **done pursuant to the instructions of Continental**, broke any chain of causation." Trial Ct. Op., 5/24/21, at 15 (emphasis added). We agree. Simply, QAA's non-negligent change or modification to the magneto during an overhaul performed pursuant to instructions provided by Continental is not a superseding or intervening cause in fact of Appellees' injuries given that the jury found that more than 40 years ago Continental designed and subsequently distributed a defective product.

<u>Mr. Lallo's Negligence</u>

Continental next asserts that the trial court erred in not granting JNOV on Appellees' negligence claim as to Mr. Lallo because under Alabama law, Mr. Lallo's contributory negligence is a complete bar to his claims. Continental's Brief at 45-46.

Continental's analysis of this issue consists of a three-sentence argument and citation to three Alabama cases supporting the legal principle asserted. Continental has failed, however, to provide us with any legal

analysis to support its claim that the trial court erred in applying Pennsylvania law on this issue. Also, even assuming that Alabama law applies, Appellant has failed to identify how Alabama defines and distinguishes between a wrongful death and survival claim and has failed to provide a legal analysis regarding the application of contributory negligence to each of those claims. Simply, Continental's bald assertion in its Brief that the jury's finding that Mr. Lallo was contributorily negligent bars Appellees' negligence claim does not constitute a developed appellate argument with respect to these complex issues. We cannot and will not develop such an argument on Continental's behalf. Thus, Continental has waived this issue.

In sum, we conclude that the trial court properly denied Continental's motion for JNOV on the jury's verdict that Continental was negligent in its design of the magneto.[14]

**Issue IV: The General Aviation Revitalization Act ("GARA")**

---

[14] Having affirmed the verdict in favor of Appellees on their negligent design claim, we need not address Continental's claims challenging the jury's verdict in favor of Appellees on their product liability claim arising under the Alabama Extended Manufacturer's Liability Doctrine because Appellees faced a lesser burden under the AEMLD. ***See McMahon***, 95 So.2d at 772. Moreover, even if we found that the trial court erred in not granting JNOV on the product liability claim, Appellees only needed to establish one theory of liability to support the verdict, and they successfully established their negligent design theory.

In its fourth issue, Continental asserts that the trial court erred in not finding that the 18-year statute of repose provided in GARA, 49 U.S.C. § 40101, precluded Appellees from recovering.

The general statute of repose is set forth in GARA § 2(a) as follows:

> Except as provided in subsection (b), no civil action for damages for death or injury to persons or damage to property arising out of an accident involving a general aviation aircraft may be brought against the manufacturer of the aircraft or the manufacturer of any new component, system, subassembly, or other part of the aircraft, in its capacity as a manufacturer if the accident occurred … after the applicable limitation period [of eighteen years].

GARA § 2(a)

> GARA's rolling provision provides that
>
> with respect to any new component, system, subassembly, or other part which replaced another component, system, subassembly, or other part originally in, or which was added to, the aircraft, and which is alleged to have caused such death, injury, or damages, after the applicable [18-year] limitation period beginning on the date of completion of the replacement or addition.

GARA § 2(a)(2). Stated another way, the 18-year period of repose resets when a new replacement part is installed and the part is alleged to have caused the accident.

Continental maintained at trial, as it does on appeal, that, because the allegedly defective aspect of the design of the magneto had been in the marketplace for over 18 years, Appellees could not prove the applicability of GARA's rolling provision. Continental's Brief at 47-49. In support of this claim, Continental asserts that Appellees did not present any evidence that

the impulse coupling spring installed in July 2013 as part of QAA's overhaul caused the magneto to loosen or rotate, resulting in loss of power to the engine and the airplane to crash. *Id.* at 49. Continental also asserts that Appellees also failed to prove that the impulse spring coupling actually failed. *Id.* at 52-54. In other words, Continental claims that Appellees failed to prove that the new part—the impulse coupling spring—was defective and caused Appellees' injuries.

The trial court addressed the evidence presented by Appellees in support of their position that the installation of a new impulse coupling spring triggered GARA's rolling provision as follows:

> During the trial [Appellees] produced evidence that the impulse coupling spring inside of the magneto was replaced with a [Continental-produced] spring several weeks before the accident and provided expert testimony that this spring's failure caused this accident. Therefore, the jury was charged on GARA with the instruction proposed by Continental and concluded that GARA's rolling provision effectively tolled the GARA's statute of repose, as the Continental spring was clearly a component part of the magneto. As it being a component part, the GARA rolling provision clearly applied in this instance and Continental cannot be cleared of liability under GARA.
>
> [Appellees'] theory against Continental was that the single drive dual magneto design was defective, in that it was prone to single point failures, such as rotor drag, and failure of the magneto attachment point which would cause the engine to change timing resulting in a loss of engine power. [Appellees'] claims against Continental [a]rose out of Continental's role as the designer, aviation part manufacturer, and the party responsible for the continuing airworthiness of the of its products.
>
> [Appellees'] expert witnesses testified that when the rotating magnet contacted the field, the impulse coupling allowed the magneto to retard the spark to the plane's engine. This in turn resulted in the impulse coupling spring seizing causing the loss

> of power because the combination of the magneto and the impulse coupling allows the magneto to get out-of-sync- with the engine for the ignition timing. This then caused an intermittent loss of power and a rough running engine. The impulse coupling operated through the spring, can move the magneto independently from the engine. As the engine turns, if there is excessive friction, the spring will bind up and retard the ignition.

Trial Ct. Op., 5/24/21, at 11-12.

Our review of the record confirms the trial court's summary of the evidence presented by Appellees to support their claim that the magneto design, which included the impulse coupling spring functioning as described above, was defective and this defect caused Appellees' injuries. The jury credited this testimony and evidence, and we cannot and will not reweigh it, and substitute our judgment for that of the jury. In light of the jury's finding that the new impulse coupling installed inside the magneto just weeks before the accident was defective and caused the accident, the trial court did not err when it found that GARA's rolling provision tolled the statute of repose. Accordingly, Continental is not entitled to relief on this claim.[15]

**Issue V: Continental is Not Entitled to a New Trial**

---

[15] Continental also asserts that the court erred in addressing Appellees' "binding theory" with respect to the trigger of GARA's rolling provision because this theory represented a new cause of action raised by Appellees after the statute of limitations had expired. Continental's Brief at 50-51. We decline to address this claim as Continental did not include it in its Statement of Questions Involved and it is not fairly suggested thereby; thus, it is waived. *See* Pa.R.A.P. 2116 ("No question will be considered unless it is stated in the statement of questions involved or is fairly suggested thereby.").

In its fifth issue, Continental contends that the trial court should have granted it a new trial because the court erred in admitting certain evidence. Continental's Brief at 54-57.

**Standard of Review**

The grant of a new trial is within the discretion of the trial court. ***Martin v. Evans***, 711 A.2d 458, 461 (Pa. 1998). It is appropriate to grant a new trial "in those instances where the original trial, because of taint, unfairness or error, produces something other than a just and fair result, which, after all, is the primary goal of all legal proceedings." ***Harman ex rel. Harman v. Borah***, 756 A.2d 1116, 1121 (Pa. 2000) (citation omitted). Absent a clear abuse of discretion, a trial court's decision to grant or deny a new trial will not be disturbed. ***Id.*** at 1121-22.

In its evaluation of whether to grant a new trial, a trial court must first decide whether a mistake was made at trial. ***Id.*** at 1122. If it concludes that a mistake occurred, then the court must determine whether the mistake is a sufficient basis for granting a new trial. ***Id.*** "A new trial is not warranted merely because some irregularity occurred during the trial or another trial judge would have ruled differently; the moving party must demonstrate to the trial court that he or she has suffered prejudice from the mistake." ***Id.***

"In order to warrant a new trial, the error complained of must be such as to prejudice a party's case in the eyes of the jury and thus prevent a just

and fair decision being made by the jury." ***Pollock Indus., Inc. v. General Steel Castings Corp.***, 201 A.2d 606, 612 (Pa. Super. 1964).

**NTSB Probable Cause Determination**

Continental first claims that Appellees improperly elicited from Continental's pilot expert, Gregory Feith, testimony that the National Transportation Safety Board ("NTSB") did not say that Mr. Lallo violated 14 C.F.R. § 91.7, the federal regulation that prohibits the operation of unairworthy aircraft.[16]  Continental's Brief at 54-55.  Continental asserts this testimony implicated the NTSB's "probable cause determination," use of which the parties agree federal law prohibits in civil tort litigation.  ***Id.*** at 54. Continental argues that, once Mr. Feith testified as described above, the trial court erred when it refused to permit Continental to present further testimony or evidence regarding the probable cause determination since Appellees had "opened the door" to that evidence.  ***Id.***  It asserts that this evidentiary error prejudiced it by "leav[ing] the jury with the inference that the NTSB determined that Mr. Lallo was not operating an unairworthy aircraft and [leaving Continental] with no way to rebut that inference."  ***Id.*** at 55.

---

[16] 14 C.F.R. § 91.7, "Civil Aircraft Airworthiness," provides, in relevant part, that "[n]o person may operate a civil aircraft unless it is in an airworthy condition."  14 C.F.R. § 91.7(a).  It further provides that, "The pilot . . . is responsible for determining whether [the] aircraft is in condition for safe flight.  The pilot . . . shall discontinue the flight when unairworthy mechanical, electrical, or structural conditions occur."  ***Id.*** at § 91.7(b).

Appellees counter that the "cross-examination had 'nothing to do' with what the NTSB determined was the 'probable cause' of the accident." Appellees' Brief at 59-60. They further argue that "there was no harmful error, as the jury heard all of the testimony [and] was appropriately charged[.]" *Id.* at 60.

The relevant portions of the Notes of Testimony indicate that the following transpired. On direct examination, Continental's expert, Mr. Feith testified that in preparing his expert opinion, he reviewed, *inter alia*, the NTSB accident investigation report. N.T., 8/13/19 PM, at 5. He further testified that, in his expert opinion, Mr. Lallo violated Section 91.7 by not landing the aircraft following its first loss of engine power and that Mr. Lallo's decision not to land the plane at that time contributed to the crash. N.T., 8/13/19 AM, at 104-05; N.T., 8/13/19 PM, at 13.

On cross-examination, Mr. Feith confirmed that he had reviewed the NTSB's accident investigation report. N.T., 8/13/19 PM, at 23. He then confirmed his own expert opinion that when Mr. Lallo's aircraft started to lose power, it was no longer airworthy and, therefore, "it was illegal for [him] to continue to fly." *Id.* at 26. When asked if the NTSB said whether Mr. Lallo violated Section 91.7, Mr. Feith conceded that it did not. *Id.* at 27. Continental did not lodge an objection to this testimony. Appellees' counsel then began to ask Mr. Fieth about whether the NTSB report contained any

judgment about Mr. Lallo's conduct,[17] whereupon Continental's counsel objected and a sidebar discussion ensued. *Id.*

At the sidebar, Continental's counsel argued that Appellees' counsel "has just asked the witness a question which opens the door to the NTSB's probable cause finding." *Id.* at 28. Appellees' counsel denied that his question implicated the NTSB's probable cause finding and argued instead that, "[a]ll I asked was . . . did the NTSB say he violated 91.7 and it didn't." *Id.* at 29. The trial court agreed with Appellees' counsel, finding that counsel "got very close to asking about [the probable cause finding], but I don't think he has gotten to the point where you can get in the probable cause findings of the NTSB report." *Id.* at 31. The court also refused Continental's counsel's request for a curative instruction. *Id.* at 32-33.

In sum, the trial court found that Mr. Feith's testimony that the NTSB had not said that Mr. Lallo violated Section 91.7 was not testimony implicating the NTSB's probable cause determination.

Analysis of this issue turns on the soundness of the premise upon which Continental bases this claim, *i.e.*, that testimony that the NTSB did not state that Mr. Lallo violated a federal regulation is the same as testimony regarding the substance of the NTSB's probable cause determination. The trial court concluded that they were not one in the same. We have no

_____

[17] Appellees' counsel's question reads: "Is there anything . . . in the NTSB report indicating that Mr. Lallo—." N.T., 8/13/19 PM, at 27.

reason to disagree as Continental has not cited to any legal authority explaining the relationship between a pilot's violation of Section 91.7 and the NTSB's probable cause determination. Given the conspicuous absence of any authority supporting Continental's attempt to synonymize this evidence or a framework in which we can evaluate this premise, we agree with the trial court that Mr. Feith did not improperly testify about the NTSB's probable cause determination.[18] Accordingly, Continental is not entitled to a new trial on this claim.

**Use of Videotaped Depositions**

Continental next contends that the trial court erred in entering its October 25, 2018 Amended Pretrial Order, which precluded Continental, and any other party, from using videotaped depositions in violation of Pa.R.C.P. 4020. Continental's Brief at 55-56.

This claim is disingenuous as the trial court later revisited this Order and permitted Continental to present the videotaped depositions to the jury.

_____

[18] We acknowledge that Continental has cited to authority for the uncontested proposition that federal law prohibits the use of such "probable cause" determinations in civil tort litigation except when one party "opens the door" to its introduction. **See** Continental's Brief at 54 (citing **Hickson Corp. v. Norfolk S. Ry. Co.**, 227 F.Supp.2d 903 (E.D. Tenn. 2002), *aff'd*, 124 F.App'x 336 (6th Cir. 2005). It did not, however, cite to any authority to support is claim that Mr. Feith's testimony was itself improper as it implicated the NTSB's probable cause determination or which would provide this Court with a framework for analyzing this issue.

Having, thus, suffered no harm from this Order, Continental is not entitled to a new trial or any other relief based on this claim.

## Issue VI: Delay Damages

In its final issue, Continental urges this Court to reverse the trial court's order awarding delay damages to Appellees. Continental presents three alternative bases for this request, which we address *seriatim.*

**Appellees' Motion for Delay Damages Was Procedurally Proper**

First, Continental asserts that Appellees' August 19, 2019 Motion for Delay Damages was improper because it lacked the notice required by Pa.R.C.P. 238(c).[19] Continental's Brief at 57-58. Continental asserts that Appellees neglected to include this notice with their Motion for Delay Damages, and did not correct the omission until September 18, 2019, more than 10 days after the jury entered its verdict. *Id.* at 58. Continental argues, therefore, that Appellees' Motion for Delay Damages was not timely filed, is a legal nullity, and the court should not have awarded Appellees delay damages.[20] *Id.*

---

[19] Pa.R.C.P. 238(c) requires a party to include a notice of filing with its motion for delay damages informing the adverse party of the deadline for filing a written answer and the consequences of failing to do so.

[20] Continental does not assert that it lacked actual notice of the Motion for Delay Damages or that it was prejudiced by Appellees' initial oversight.

Our review of the trial court docket reveals the following relevant procedural history. On August 16, 2019, the jury returned a verdict in favor of Appellees and awarded them compensatory damages. On August 19, 2019, Appellees filed a Motion for Delay Damages. Prior to disposition of this Motion, Continental moved for post-trial relief, which the trial court denied on May 18, 2020, except for the reduction of Mr. Lallo's damages by 10% for his contributory fault.

Even though judgment had not yet been entered and Appellees' Motion for Delay Damages was pending, Continental filed a Notice of Appeal on June 3, 2020. On June 11, 2020, because Continental had filed a notice of appeal, the trial court, having lost "jurisdiction over any unresolved requests for relief" pursuant to Pa.R.A.P. 1701(a),[21] entered an order dismissing Appellees' Motion for Delay Damages without prejudice to refile.

On October 28, 2020, the Superior Court dismissed Continental's premature appeal. Following remand to the trial court, on October 30, 2020, Appellees filed a Renewed Motion for Entry of Delay Damages, which included the notice required by Rule 238(c).

In light of the trial court's dismissal of Appellees' first Motion for Delay Damages without prejudice and Appellees' subsequent filing their Renewed Motion for Delay Damages, which included the required notice, we conclude

---

[21] Order, 6/11/20.

that Continental's claim that the court should not have awarded Appellees delay damages lacks merit.

**Ohio Law Does Not Apply to the Award of Delay Damages**

In its next issue, Continental asserts that the trial court misapplied Ohio law when it awarded Appellees delay damages because Appellees failed to submit a written settlement offer to Continental. Continental's Brief at 58-59.

Delay damages are procedural in nature and Pennsylvania courts are required to apply Pennsylvania procedural rules. ***Laudenberger v. Port Auth. of Allegheny Cty***, 436 A.2d 147, 155 (Pa. 1981); ***Ferraro***, 777 A.2d at 1137. Thus, the trial court properly considered Appellees' request for delay damages pursuant to Pa.R.C.P. 238 and not pursuant to Ohio's delay damages rules.

**The Court Erred in Awarding Appellees Delay Damages on the Verdict Arising From Their Survival Action**

In its final issue, Continental argues that the trial court erred in awarding delay damages to Appellees on their survival action verdict because Pennsylvania's delay damages rule precludes the award of delay damages on the portion of a verdict arising from emotional injury. Continental's Brief at 59. We agree.

The interpretation of the rules of civil procedure raises a question of law; thus, we apply a *de novo* standard of review. ***Jones v. Riviera***, 866 A.2d 1148, 1150 (Pa. Super. 2005)

Rule 238(a)(1) provides, in relevant part, as follows:

At the request of the plaintiff in a civil action seeking monetary relief for bodily injury, death, or property damage, damages for delay shall be added to the amount of compensatory damages awarded against each defendant or additional defendant found to be liable to the plaintiff in the verdict of a jury[.]

Pa.R.C.P. 238(a)(1).

Thus, in Pennsylvania, the trial court may award delay damages to a plaintiff who has prevailed on a claim for bodily injury, death, or property damage. *Id.* This Court has held that claims for emotional injury, loss or reputation, humiliation, and mental anguish do not constitute claims for which a trial court may award delay damages. *Butler v. Flo-Ron Vending Co.*, 557 A.2d 730, 739-40 (Pa. Super. 1989). *See also Anchorstar v. Mack Trucks, Inc.*, 620 A.2d 1120, 1121-22 (Pa. 1993) (holding that compensation for loss of consortium is not encompassed within the delay damages rule); *Oweida v. Tribune-Review Pub. Co.*, 599 A.2d 230, 247 (Pa. Super. 1991) (holding that delay damages are not recoverable in a libel action because a libel action seeks relief for reputational damage and not for bodily injury).

Instantly, Appellees' survival claims, which sought relief for the emotional injuries suffered by the Lallos in the moments prior to their death, do not fall within the ambit of bodily injury, death, or property damage required for the award of delay damages under Rule 238. Accordingly, we conclude that the trial court erred in awarding Appellees delay damages on the portion of the verdict attributable to Appellees' survival claims. We,

thus, vacate the judgment in favor of Appellees' and remand for the trial court to reduce the judgment by the amount of delay damages it awarded for Appellees' survival claims.

Judgment affirmed in part and vacated in part. Case remanded with instructions. Jurisdiction relinquished.

*Judgment Entered.*

*Joseph D. Seletyn, Esq.*
*Prothonotary*

*Date: 5/26/2022*