NOT RECOMMENDED FOR PUBLICATION
File Name: 23a0314n.06

No. 22-5280

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

KAYLA ANDERSON, Administrator of the
Estate of WILLIAM ANDERSON

    Plaintiff-Appellant,

v.

KNOX COUNTY, et al.

    Defendants-Appellees

)
)
)
)
)
)
)
)
)
)
)

**FILED**
Jul 13, 2023
DEBORAH S. HUNT, Clerk

ON APPEAL FROM THE
UNITED STATES DISTRICT
COURT FOR THE EASTERN
DISTRICT OF KENTUCKY

OPINION

Before: WHITE, THAPAR, and NALBANDIAN, Circuit Judges.

**NALBANDIAN, Circuit Judge.** A jury acquitted William Anderson of murdering Bobby

Wiggins. Now, Anderson is suing the county and officers who investigated his case for malicious

prosecution and fabrication of evidence. The district court granted summary judgment to the

county and officers, and Anderson appealed. Because there is no genuine dispute of material fact

on probable cause—the lynchpin of Anderson's case—we affirm.

**I.**

The last time anyone saw Bobby Wiggins alive was on November 23, 2011. Eight days

later, Wiggins's friend Kimberly York filed a missing persons report with the Knox County

Sheriff's Office. And her story went like this: On November 23, Wiggins met York and a man

named James Otis Sizemore at York's home because York wanted to buy a prescription drug pill

from Wiggins. Wiggins and Sizemore then left York's house in Wiggins's black Toyota Camry.

And York never saw Wiggins again. After Wiggins's disappearance, York talked with William

Anderson—the plaintiff in this case—about her concern for Wiggins. Anderson told her that he had been with Sizemore in the afternoon. And that's not all. Apparently, he had a revelation: Sizemore had given him a coat and hat—Wiggins's coat and hat.

Based on York's story, Deputy Derek Eubanks and Sheriff John Pickard of the Knox County Sheriff's Office began investigating Wiggins's case. The officers interviewed Jeremy Ferrell and Dave Fox. They also drove to Anderson's home and spoke with him there. And Anderson handed over a coat and hat that he believed belonged to Wiggins in this initial visit. On that much, everyone agrees. But that's where the agreement ends. As the officers investigated, Anderson and Sizemore gave conflicting accounts of what happened on November 23, 2011.

First, Anderson's account. He was at home all day on November 23 with his friend Dave Fox until the two drove to a local convenience store to pick up cigarettes and sodas. And Anderson says that's when he ran into Sizemore and Sizemore's friend Jeremy Ferrell. Sizemore drove up in a black Toyota Camry with Ferrell, paid for the items Anderson and Fox had gathered, and drove Anderson and Ferrell back to Anderson's home in the Camry. Fox drove back to Anderson's house in the other car.

On the way to Anderson's home, Sizemore stopped by Ferrell's house, and Sizemore and Anderson "sho[t] up" pills. (*See* R. 193-2, Anderson Dep., p. 161–62.) Sizemore also took out all the papers in the glove compartment of the Camry and burned them in Ferrell's yard. Before going back to Anderson's house, Sizemore took out a black coat and hat from the Camry and gave them to Anderson. Anderson says that he never saw Wiggins that day.

Next, Sizemore's account. Sizemore told several conflicting stories to the Knox County officers but landed on an account that included Anderson killing Wiggins on November 23. After leaving York's house with Wiggins, Sizemore and Wiggins met up with Anderson. After a little

while, Anderson drove Sizemore and Wiggins in an ATV to Red Bird Mountain. The cover story was that Anderson was taking Wiggins to meet a pill buyer. But Anderson had all intentions of robbing him instead. Worth noting, at the time, Wiggins was wearing a black coat and hat. Sizemore stated that he walked away from Anderson and Wiggins on the mountain, but ultimately turned back when he heard a "battle roar." (R. 193-33, Sizemore Statement 2, p. 7.) He found Anderson alone with blood on his hands.

After hearing Sizemore's side of the story, the Knox County officers contacted Detective Jason York[1] of the Kentucky State Police to investigate the case. Sizemore eventually led the officers to Wiggins's body on Red Bird Mountain. At this point, the Kentucky State Police took over the investigation, with Detective Brian Johnson taking the lead.

The Kentucky State Police then interrogated Sizemore. Sizemore ultimately admitted to (1) telling Wiggins that he and Anderson would rob him and (2) hitting Wiggins with a rock in the head when Wiggins tried to hit him. According to Sizemore, Anderson then stabbed Wiggins multiple times with a double-bladed pocketknife. And Anderson and Sizemore dragged Wiggins's body away from the scene and covered him with leaves. After this, they took the money and pills on Wiggins, and Anderson took Wiggins's coat and hat. Then, they headed back down the mountain in the ATV. Sizemore said that they burned the contents of Wiggins's Camry at Ferrell's house and burned the Camry itself that night.

In December, Johnson attended the autopsy of Wiggins's body and discovered that Wiggins had about 18 stab wounds in the front of his body and a lacerated skull from being struck with a blunt object. With the results of the autopsy, Sizemore's account, and Anderson's possession of Wiggins's coat and hat, Detectives York, Mark Mefford, and Jackie Joseph arrested

---

[1] Detective Jason York is not related to the aforementioned Kimberly York.

3

Anderson for Wiggins's murder. At that time, the officers found and seized a double-bladed pocketknife Anderson had in his pocket. Next, the detectives questioned Anderson about Sizemore's account that Anderson had stabbed Wiggins. Anderson denied that he had seen Wiggins on November 23. Detective York then told Anderson that he was going to jail and would be charged with murder.

Also relevant to this appeal is Fox's account. To refresh, Anderson said that he had spent all day with Fox on November 23. So a Knox County officer spoke with Fox informally about that day. But a second interrogation headed up by the Kentucky State Police followed a couple of days later. That interrogation lasted for over three hours. Fox initially told the officers that he had spent "about all day" with Anderson on November 23, and that he could not "think of a time that [Anderson] was not present." (R. 193-45, Fox Interrogation, p. 23, 83.) A few moments later, however, Fox denied that he was "with [Anderson] all day long" and stated that Anderson "might have slipped off" during "a time frame that [he] was unaware of" but "to the best of [his] knowledge . . . Bill couldn't do [the murder] because he was here all day." (*Id.* at 86–87). The officers pushed back on this. At least one officer "flipped [a] table upside down" and "smacked" Fox's hat off his head. (R. 193-12, Fox Deposition, p. 88–89; R. 193-45, Fox Interrogation, p. 149, 163; R. 193-11, Fox Trial Transcript, p. 108.) When Fox didn't provide the storyline the officers had expected, they continuously called him a liar and told him they were taking him to "jail" and that he was going "down" along with Anderson. (R. 193-45, Fox Interrogation, p. 146–47.) And one officer said it was a "matter between [Fox] leaving here in handcuffs tonight and [Fox] leaving in [his] car tonight" if he couldn't confirm when he had seen Anderson that day. (*Id.* at 152.) Fox later said that he felt that if he didn't say what the officers wanted, he wouldn't be allowed to leave. So following up on his prior statement, Fox said that he didn't know for sure whether Anderson

had slipped away during the day on November 23 and that he only knew about Anderson's whereabouts from 3:00 PM and beyond.

In February 2012, a grand jury indicted Anderson for Wiggins's murder. The government's presentation to the grand jury included Johnson's testimony, Sizemore's account, the physical evidence, and the autopsy report. Sizemore pleaded guilty to his part in Wiggins's murder. But Anderson didn't. In 2016, Anderson stood trial. And a jury acquitted him.

Acquittal in hand, Anderson sued Knox County and the county and state officers (collectively, "the officers") involved in his case in their individual capacity in federal district court for malicious prosecution and fabrication of evidence under 42 U.S.C. § 1983 and state law. The defendants moved for summary judgment below, arguing that no constitutional violations had occurred in the investigation of Anderson's case and that they were entitled to absolute and qualified immunity. The district court granted summary judgment to Knox County and the officers. Anderson timely appealed, but he passed away while this appeal was pending. And the administrator of his estate was substituted in his place in this appeal.

## II.

Before we get to the merits, Anderson's appeal faces one jurisdictional hurdle. Because he passed away after he appealed, the panel must determine whether his § 1983 claims survive his death. To answer that question, we look at the forum state's survivorship laws because "no suitable federal rule" governs this situation. *Crabbs v. Scott*, 880 F.3d 292, 294 (6th Cir. 2018).

So Kentucky law controls. And defendants argue that Kentucky's survivorship statute, Kentucky Revised Statute § 411.140, precludes Anderson's claims from continuing after he died. Kentucky's statute provides:

> No right of action for personal injury or for injury to real or personal property shall cease or die with the person injuring or injured, except actions for slander, libel, criminal conversation, and so much of the action for malicious prosecution as is intended to recover for the personal injury. For any other injury an action may be brought or revived by the personal representative, or against the personal representative, heir or devisee, in the same manner as causes of action founded on contract.

Ky. Rev. Stat. § 411.140.

Looking at the statute, defendants reason that Kentucky law prevents state claims like "slander, libel, criminal conversation, and . . . *malicious prosecution*" from continuing after a plaintiff dies. *Id.* (emphasis added). And so, they argue that Anderson's § 1983 malicious-prosecution and other claims don't survive his death. *See id.*

Recent precedent forecloses the argument. As this Court held in *Price v. Montgomery County*, Kentucky's survivorship statute allows § 1983 claims to go forward even after a plaintiff's death. *See* --- F.4th ----, No. 21-6076, 2023 WL 4346954, at *3 (6th Cir. July 5, 2023). That's because all § 1983 claims (including those alleging malicious prosecution or fabrication of evidence) will always be labeled as "basic personal injury actions"—*not* their state-law counterparts. *Id.* ("[F]or determining survival of § 1983 claims, we do not break them out individually." (citing *Jackson v. City of Cleveland*, 925 F.3d 793, 811 (6th Cir. 2019)).

Even though Anderson's § 1983 claims sound in "malicious prosecution," we still analyze whether Kentucky law allows an estate to bring a basic "personal injury claim" on behalf of the decedent. And as in *Price*, *see id.*, it does, Ky. Rev. Stat. § 411.140 ("No right of action for personal injury . . . shall cease or die with the person injuring or injured[.]"). Seeing that personal injury actions "do not abate" under Kentucky law, *Price*, 2023 WL 4346954, at *3, we turn to the merits.

## III.

In a § 1983 suit, a plaintiff must establish that a "person . . . under color of" state law violated the plaintiff's rights under federal law. 42 U.S.C. § 1983. To win on summary judgment, the moving party must show "that there is no genuine dispute as to any material fact" and that he "is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). We take all facts and factual inferences in the light most favorable to the nonmovant. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

When a state official raises a defense of qualified immunity, the plaintiff must prove (1) that the official violated one of his constitutional rights and (2) that the right was clearly established under our caselaw.[2] *See Gambrel v. Knox County*, 25 F.4th 391, 399 (6th Cir. 2022). Aside from qualified immunity, "An absolute immunity [defense] defeats a suit at the outset, so long as the official's actions were within the scope of the immunity." *Imbler v. Pachtman*, 424 U.S. 409, 419 n.13 (1976). "If absolute immunity applies to the defendants, we do not need to reach the substantive issues" of the case. *Cady v. Arenac County*, 574 F.3d 334, 339 (6th Cir. 2009). And, unlike a qualified-immunity defense, it's the *defendant's* burden to establish entitlement to absolute protection. *See Lomaz v. Hennosy*, 151 F.3d 493, 497 (6th Cir. 1998) (citing *Burns v. Reed*, 500 U.S. 478, 486 (1991)).

## IV.

On appeal, Anderson makes three arguments: (A) that his malicious-prosecution claim should move forward because his evidence undermines the presumption of probable cause from a

---

[2] On appeal, only the county defendants make an argument that the alleged constitutional violations were not clearly established. The state defendants, by contrast, only address whether any constitutional violations occurred in their appellate briefing. Because we hold that absolute immunity bars one of Anderson's arguments and his other arguments fail on the merits of the constitutional claims, we don't address the clearly-established prong of qualified immunity.

grand-jury indictment; (B) that his fabrication claim survives summary judgment because there is sufficient evidence that the officers coerced and fabricated evidence against him; and (C) that his miscellaneous federal and state-law claims should move forward based on the merit of his underlying malicious-prosecution and fabrication claims. We'll take each in turn.

**A.**

First, the malicious prosecution claim.[3] Anderson must establish that "(1) a criminal prosecution was initiated against [him] and the defendant made, influenced, or participated in the decision to prosecute; (2) there was no probable cause for the criminal prosecution; (3) as a consequence of the legal proceeding, [Anderson] suffered a deprivation of liberty apart from the initial seizure; and (4) the criminal proceeding was resolved in [Anderson's] favor." *Robertson v. Lucas*, 753 F.3d 606, 616 (6th Cir. 2014). And Anderson can raise a malicious-prosecution claim for "continued detention without probable cause," if he was detained after probable cause dissolved. *Mills v. Barnard*, 869 F.3d 473, 480 (6th Cir. 2017) (citation omitted); *see also Jackson*, 925 F.3d at 820 n.15. In short, "the Fourth Amendment prohibits [] those pretrial seizures (or prosecutions) that lack *probable cause.*" *Lester v. Roberts*, 986 F.3d 599, 607 (6th Cir. 2021).

The parties only dispute the first two elements of the malicious prosecution claim—whether the defendants influenced or participated in the decision to prosecute and whether *there was probable cause* for the criminal prosecution.

We'll start and end with probable cause. A grand jury indicted Anderson for Wiggins's murder. And generally, "the finding of an indictment, fair upon its face, by a properly constituted

---

[3] As we've discussed in other opinions, the name "malicious prosecution" is misleading, given that it is located within the Fourth Amendment. The Fourth Amendment discusses neither maliciousness nor prosecution. *See Lester v. Roberts*, 986 F.3d 599, 606–07 (6th Cir. 2021); *see also Tlapanco v. Elges*, 969 F.3d 638, 658–59 (6th Cir. 2020) (Thapar, J., concurring).

grand jury, conclusively determines the existence of probable cause." *Barnes v. Wright*, 449 F.3d 709, 716 (6th Cir. 2006) (quoting *Higgason v. Stephens*, 288 F.3d 868, 877 (6th Cir. 2002)). To overcome this "presumption of probable cause," Anderson must show that

> (1) A law-enforcement officer, in the course of setting a prosecution in motion, either knowingly or recklessly made false statements (such as in affidavits or investigative reports) or falsified or fabricated evidence; (2) the false statements and evidence, together with any concomitant misleading omissions, were material to the ultimate prosecution of the plaintiff; and (3) the false statements, evidence, and omissions did not consist solely of grand-jury testimony or preparation for that testimony (where preparation has a meaning broad enough to encompass conspiring to commit perjury before the grand jury).

*Jackson*, 925 F.3d at 821 (cleaned up).

Anderson argues that the officers (1) fabricated evidence and (2) offered false testimony before the grand jury and made material omissions, leading the grand jury to wrongfully indict him. Finally, Anderson says that (3) even absent fabrication or false testimony, there was no probable cause to arrest or detain him. We'll address each in turn.

**1.**

Start with the claim of fabricated evidence. True, fabricated evidence and manufactured probable cause can undermine a grand jury's indictment and sustain a malicious-prosecution claim under the Fourth Amendment. *King v. Harwood*, 852 F.3d 568, 588 (6th Cir. 2017). But fabrication means more than just wrong information—it means evidence offered "knowingly" or in bad faith. *See Robertson*, 753 F.3d at 617 & n.7; *Halsey v. Pfeiffer*, 750 F.3d 273, 295 (3d Cir. 2014); *Black v. Montgomery County*, 835 F.3d 358, 372 (3d Cir. 2016) ("There must be persuasive evidence supporting a conclusion that the proponents of the evidence are aware that the evidence is incorrect or that the evidence is offered in bad faith." (cleaned up)). It's not enough that an officer is mistaken or negligent in determining witness credibility. *See Robertson*, 753 F.3d at 617 n.7. And an officer can rely on "eye-witnesses' statements" because they are "firsthand observations" and

so "entitled to a presumption of reliability and veracity." *Ahlers v. Schebil*, 188 F.3d 365, 370 (6th Cir. 1999).

Anderson says that the officers fabricated Sizemore's confession and statement during their investigation and presented that fabricated statement before the grand jury.[4] To support this argument, Anderson points to Sizemore's inconsistent accounts of what happened on November 23 and the officers' lines of questioning. And Anderson accuses the officers of making "promises of consideration hinged on [Sizemore] implicating" Anderson and "feeding Sizemore 'details' about the murder." (Appellant's Br. at 38–39.) Anderson also says that the officers coerced and threatened Fox to implicate Anderson in the murder after hearing Sizemore's account. So, Anderson argues, when the information from these conversations was presented to the grand jury, it was fabrication of evidence. And that, he says, undermines the presumption of probable cause from a grand-jury indictment.

These arguments fall flat as to Sizemore's account: The officers questioned Sizemore in a set of two interrogations, and Sizemore led the officers to the body. He offered specific details about the murder that lined up with what the officers had discovered, like Anderson having a double-bladed pocketknife, Wiggins having been stabbed to death, and Anderson having Wiggins's coat and hat. Even if Sizemore lied about some details throughout both interrogations, Sizemore's lack of honesty can't be imputed to the officers. His statements—along with the corroborating evidence the officers discovered otherwise—created probable cause.[5] *See Franklin*

---

[4] Anderson also argues that Johnson lied in the preliminary hearing. Because his argument on the preliminary hearing testimony is the same as his argument on the grand-jury testimony, we will address them as a single claim. *See Briscoe v. LaHue*, 460 U.S. 325, 335–36 (1983).

[5] True, when an eyewitness contradicts himself or has a motive to lie, that might undermine a finding of probable cause. *See Ahlers*, 188 F.3d at 370. But because Sizemore's ultimate account

*v. Miami Univ.*, 214 F. App'x 509, 512 (6th Cir. 2007) ("Once probable cause was established, and the evidence supplied by these witnesses did just that, the officers were under no duty to investigate further or to look for additional evidence which may exculpate the accused." (quotation marks omitted) (cleaned up)).

Otherwise, any time a suspect provided conflicting stories, an officer would be liable for pursuing one theory in good faith. *Cf. United States v. Burch*, 471 F.2d 1314, 1317 (6th Cir. 1973) ("It is generally accepted that a showing of inconsistent statements will not make the testimony incredible as a matter of law.").

And there is no evidence that the officers coerced Sizemore into saying anything false. To be sure, they followed up on his statements by crafting questions along his own storyline. And they directed the conversation toward his answers and inconsistencies. But that is standard interrogation technique—not evidence of fabrication or coercion.[6] *Cf. Illinois v. Perkins*, 496 U.S.

---

was corroborated by the physical evidence, officers had probable cause to consider Anderson a suspect.

[6] Anderson also points to a series of jailhouse calls Sizemore made to his family members that were introduced at trial. In these calls, Sizemore says that he hasn't said anything to the officers about his uncle. Anderson says that these snippets of conversation establish that Sizemore wasn't telling the truth in his interview and that it was Sizemore's uncle who killed Wiggins. Out of context, these snippets don't establish much. And as the prosecution elicited at Anderson's trial, when considered in context, the jailhouse calls pointed toward Sizemore thinking that Anderson had committed the murder and that his uncle had committed a drug crime. But even if Anderson were right that Sizemore implicated his uncle instead of Anderson for the murder, the jailhouse calls don't destroy the finding of probable cause that preceded them based on Sizemore's interrogation, the coat and hat Anderson had, and other accounts that located Anderson with Sizemore that day.

As a side note, Anderson repeatedly points to Sizemore's uncle as the murderer throughout his briefing. A jury never convicted Sizemore's uncle. And just because there are multiple suspects in a murder case, doesn't mean that the investigating officers can't establish probable cause as to one. The officers in this case investigated Sizemore's uncle and found that they couldn't establish probable cause against him. What they did find were multiple layers of evidence that implicated Anderson—not limited to Anderson's association with Sizemore on the day of the murder, Sizemore's confession and account, Anderson's possession of Wiggins's coat and hat, and other

11

292, 297 (1990) ("Ploys to mislead a suspect or lull him into a false sense of security that do not rise to the level of compulsion or coercion to speak are not within *Miranda*'s concerns."). For example, the officers' showing Sizemore that they were in possession of Wiggins's coat and hat, without telling him how they got the clothing, caused Sizemore to realize that they knew more than they were letting on and to start telling the truth. As another example, the officers' asking if the whole incident was "all over stealin' pills" was not feeding Sizemore a motive as much as it was piecing together information that Sizemore previously provided: that he and Anderson had pill habits, that Wiggins sold pills, and that Wiggins was selling pills on the day he died. (R. 193-32, Sizemore Statement 1, p. 8–9, 23–24.)

As to Fox's account, Anderson's key point is that the officers coerced Fox into a false confession so that he would back away from giving Anderson an alibi of the two having spent the morning of November 23 together at home. To be sure, "fabricated evidence can be material to a grand jury's determination of probable cause without being presented to the grand jury." *Jackson*, 925 F.3d at 821. That's because an officer may testify before a grand jury based on a fabricated statement that is never presented to the grand jury. *See id.*

But here, the parties agree that Johnson didn't testify about Fox's alibi before the grand jury. And as discussed above, the government relied on a host of other evidence, including Sizemore's account and the physical evidence, in bringing the case before the grand jury. The next question is whether Fox's testimony, if coerced and ultimately false, undermined the finding of probable cause after detention, such that Anderson should have no longer been detained. Fox's

---

accounts that located Anderson near the action on November 23. Anderson argues that there was no blood found on his pocketknife or on the ATV, and he says that absence of evidence undermines probable cause too. But the officers need not strike gold on every lead. They need only garner enough evidence to establish probable cause. Here, they did so.

account doesn't move the needle on probable cause after detention either—that is, there was still probable cause to prosecute Anderson in the face of all the evidence pointing in his direction. That evidence included Sizemore's confession, Anderson's possession of Wiggins's coat and hat, Anderson's pocketknife as the potential murder weapon, Anderson's background as a drug user who knew Sizemore, and Anderson's own account that he had been with Sizemore that day doing drugs.

So Anderson's claim of malicious prosecution based on fabricated evidence fails.

**2.**

Next up, the alleged false testimony and material omissions before the grand jury. Anderson argues that Johnson testified falsely in the preliminary hearing and before the grand jury. He attempts to point out a host of inconsistencies in the evidence and potential omissions of exculpatory evidence in Johnson's testimony.[7] Below, the district court granted Johnson absolute immunity. That's because law-enforcement officers receive absolute immunity for their testimony in judicial proceedings, like preliminary hearings, and for their testimony as grand-jury witnesses. *Rehberg v. Paulk*, 566 U.S. 356, 369 (2012); *see Briscoe v. LaHue*, 460 U.S. 325, 328 (1983).

On appeal, Anderson makes no argument that Johnson isn't entitled to absolute immunity. Instead, he only argues that Johnson fabricated evidence. The state defendants—including Johnson—have not raised a defense of absolute or qualified immunity on appeal, but the county and county officers have.

When an appellant fails to raise an issue on appeal, it is forfeited. *See Miller v. Admin. Off. of the Cts.*, 448 F.3d 887, 893 (6th Cir. 2006). So Anderson has forfeited any argument that

---

[7] Officers have "no judicially enforceable duty" to disclose exculpatory evidence to the grand jury. *See United States v. Angel*, 355 F.3d 462, 475 (6th Cir. 2004).

13

Johnson isn't entitled to absolute immunity. On the other hand, when an appellee doesn't raise an issue on appeal that he won below, that doesn't mean we can't consider it. That's because an appellee doesn't even have to file a response brief. *See* Fed. R. App. P. 31(c); *In re Hollis*, 810 F.2d 106, 107 (6th Cir. 1987) ("We note for the record that the appellee did not file a brief with this Court[.]"); *cf. Dixon v. Clem*, 492 F.3d 665, 673 (6th Cir. 2007) (explaining that we "may affirm on any grounds supported by the record" when "the issue was raised below"). In other words, it's the appellant's burden to raise on appeal arguments he lost on below, not the appellee's. Because Anderson has not addressed the district court's ruling on absolute immunity, he has forfeited this argument. *See Scott v. First S. Nat'l Bank*, 936 F.3d 509, 522 (6th Cir. 2019) (explaining that the appellant forfeits an argument when he doesn't address the district court's reasoning in dismissing a claim). And on that basis, Johnson is entitled to absolute immunity.

**3.**

Finally, probable cause absent fabrication. Anderson says that even if there was no fabricated or false evidence introduced to the grand jury, there was still no probable cause to prosecute him. From his perspective, the only evidence supporting his prosecution was Sizemore's confession, and he says that everyone agrees Sizemore wasn't credible. For one thing, Anderson is wrong on the evidence. As explained above, a host of other evidence besides Sizemore's confession supports a finding of probable cause.

And even if there weren't a host of other evidence, a grand jury's indictment is conclusive absent Anderson rebutting the presumption of probable cause. *King*, 852 F.3d at 587–88. Officers do not have an obligation to disclose exculpatory evidence to a grand jury when trying to secure an indictment. *See Angel*, 355 F.3d at 475. And Anderson hasn't shown that there wasn't probable

cause otherwise. So his own view that probable cause didn't exist doesn't rebut the grand jury's indictment.

## B.

Apart from his malicious-prosecution claim, Anderson argues a separate fabrication-of-evidence claim as a due-process violation under § 1983. Fabrication means that the officer "knowingly manufactur[ed] probable cause, thereby effecting a seizure." *Robertson*, 753 F.3d at 616 n.5. To prevail on a fabrication claim, a plaintiff who was *convicted* must show that an officer "knowingly fabricate[d] evidence against" him and "a reasonable likelihood exists that the false evidence would have affected the jury's decision." *France*, 836 F.3d at 629. And such a plaintiff can still prevail on a fabrication claim, even if probable cause otherwise existed. *See Stemler v. City of Florence*, 126 F.3d 856, 872 (6th Cir. 1997) ("A claim of fabrication of evidence does not require a conclusion that the state did not have probable cause to prosecute the claimant.").

And one reason why a fabrication claim in a conviction case can be independent of a probable-cause determination is that the fabrication claim is based on due process under the Fourteenth Amendment, not on probable cause under the Fourth Amendment. *See id.*; *compare Lester*, 986 F.3d at 608 (explaining that the malicious-prosecution claim located in the Fourth Amendment is based on "*pretrial detention*" without probable cause (emphasis added)), *with Coleman v. City of Peoria*, 925 F.3d 336, 344 (7th Cir. 2019) ("Using false evidence to *convict* violates a defendant's *right to a fair trial* guaranteed by the Fourteenth Amendment's Due Process Clause." (emphasis added)).

But what matters here is that Anderson was *acquitted*—not convicted. Anderson's fabrication claim fails because Anderson cannot show that there is "a reasonable likelihood . . . that the false evidence would have affected the jury's decision." *France*, 836 F.3d at 629. Fox's

statement didn't affect the jury's decision. The jury acquitted—not convicted. So Anderson can't meet our Circuit's test for fabrication.[8]

## C.

On a last note, the remaining federal claims for civil conspiracy, failure to intervene, supervisory liability, and failure to train and supervise fail because Anderson cannot make out a threshold constitutional violation. His state-law claim for malicious prosecution fails for the same reason his § 1983 malicious-prosecution claim fails: there was probable cause. *See Collins v. Williams*, 10 S.W.3d 493, 496 (Ky. Ct. App. 1999) ("The burden in a malicious prosecution action is on the plaintiff to prove lack of probable cause, and the probable cause issue is a question for the court to decide." (citing *Prewitt v. Sexton*, 777 S.W.2d 891, 894–95 (1989))). Anderson's state-law negligent-supervision claim fails because it is a derivate tort lacking a predicate tortious act.

---

[8] Our sister circuits are split on the issue of whether a plaintiff can bring a fabrication claim after acquittal and what that claim looks like. *Compare Black*, 835 F.3d at 371 (the Third Circuit allowing such a claim) *and Zahrey v. Coffey*, 221 F.3d 342, 348–49 (2d Cir. 2000), *with Saunders-El v. Rohde*, 778 F.3d 556, 562 (7th Cir. 2015) (not allowing such a claim). Moreover, the Supreme Court's decision in *McDonough v. Smith* impliedly recognized fabrication claims based on acquittal. *See* 139 S. Ct. 2149, 2161 (2019) ("The statute of limitations for McDonough's § 1983 claim alleging that he was prosecuted using fabricated evidence began to run when the criminal proceedings against him terminated in his favor—that is, when he was acquitted at the end of his second trial."). Under the Second Circuit's view, a plaintiff must show that the fabricated evidence "critically influenced" the prosecutor's "decision to prosecute." *See Frost v. N.Y. City Police Dep't*, 980 F.3d 231, 248 (2d Cir. 2020). Under the Third Circuit's view, which allows a fabrication claim upon acquittal, to prevail, a plaintiff must demonstrate that "there is a reasonable likelihood that, absent that fabricated evidence, [he] would not have been criminally charged," i.e., that probable cause didn't otherwise exist. *Black*, 835 F.3d at 371.

The problem for Anderson is that he doesn't establish that the supposedly fabricated evidence critically influenced the prosecutor's decision to prosecute or that probable cause didn't otherwise exist. Nor does he suggest another way to make out a fabrication claim on acquittal. So Anderson can't prevail here even if we were to adopt a separate acquittal test—a question that we leave for another day.

*E.g.*, *Roth v. City of Newport*, No. 2007-CA-001620-MR, 2008 WL 5264314, at *3 (Ky. Ct. App. Dec. 19, 2008).

For these reasons, we **AFFIRM**.